No. 83.—ANN E. McDOUGALD, Administratrix, &c., plaintiff in error, vs. JAMES D. WILLIFORD and others, defendants in error.

[1.] It does not follow, necessarily, that because the statements in the original and the amended bill are contradictory, that the latter will be rejected. The facts, as originally set forth, may be wrong, and it may be the purpose of the amendment to rectify the error. In that event, the amendment will be substituted for the original.

[2.] Mispleading should never be allowed to defeat substantial rights; but every case should ultimately be heard and determined, upon its real merits.

Ann E. McDougald, Administratrix, &c., *vs.* James D. Williford and others.

[3.] A bill may be amended for many purposes—among which, are the correction of mistakes in the original bill.

[4.] To make the amendment objectionable, on the ground of repugnancy to the original bill, the contradiction must be such, that retaining both, no decree could be rendered.

[5.] Where the matter in the bill has not been put forth with sufficient precision, the Court will always give liberty to amend the bill, for the purpose of making the necessary alterations.

[6.] Great latitude is allowed in amending bills.

[7.] Not only the discovery of new matter, existing at the time the original bill was filed, will authorize an amendment; but the fact, also, that counsel, by mistake or misapprehension, did not think the new matter necessary to be stated.

[8.] The doctrine of amendments, is now more a question of cost than any thing else.

[9.] One acting representatively, is entitled to more indulgence than the original party.

[10.] Where heirs at law sue in ejectment *as such*, to recover land, which has not been paid for by their ancestor, equity will compel them to discharge the vendor's lien, for the purchase money—the ancestor having died insolvent, and there being no representation upon his estate.

In Equity, in Muscogee Superior Court. Decision by Judge IVERSON, May Term, 1854.

The plaintiff in error, as the administratrix of Daniel McDougald, filed her bill against the heirs at law of Martin Brooks, charging, that Daniel McDougald was the owner of a lot in the City of Columbus, and being necessarily frequently absent from the city, and fearing a levy upon, and sale of the lot, as the property of some third person, during his absence, and being ignorant of the Act of 1839, authorizing claims to be interposed by agents and attorneys at law and in fact, he executed a quit claim deed, without consideration, to Martin Brooks, his agent and steward, (who rented out and received the rents for the said lot,) for the sole purpose of enabling Brooks to interpose a claim therefor, in the event of a levy; that McDougald had at all times exercised control over the lot; that Brooks was dead, and his heirs at law had commenced their action of ejectment, for the recovery of the lot. The prayer was for an account for the rents received by Brooks, a

decree that the deed be delivered up to be cancelled, and an injunction of the action of ejectment.

After answer by the defendants, the complainant, by leave of the Court, amended her bill—the order reserving to the defendants the privilege of objecting when the amendment was filed.

The amendment charged, that the deed to Brooks never was delivered, but was placed in the hands of Alexander McDougald, to be by him delivered to Brooks, whenever the necessity for its use should occur; that no such necessity arose, and hence the deed was never delivered. The amendment also set up other evidences of indebtedness from Brooks to McDougald, and prayed that the same might be considered as filed by way of supplemental bill.

At May Term, 1853, defendants' solicitors moved that the amendment be disallowed, on the grounds, 1st. That the allegations therein are contradictory of the original bill.    2d. That it was improvidently granted, as to the other portions thereof.

Upon argument, the Court sustained the motion, as to that portion of the amendment which was contradictory of the original bill, but overruled the motion as to the balance.    To this decision of the Court, the counsel for complainant excepted.

The complainant then amended his amendment, by adding an allegation, that Alexander McDougald, one of the witnesses to the deed, made the usual affidavit thereon, for the purpose of having the same admitted to record; but that in truth and in fact, the deed never was delivered.

The complainants' counsel then moved the Court, to allow the amendment thus amended—which being refused, complainant excepted.

Devon, for plaintiff in error.

Dougherty, for defendant in error.

Ann E. McDougald, Administratrix, &c., *vs.* James D. Williford and others.

*By the Court.*—LUMPKIN, J. delivering the opinion.

An action of ejectment was brought in the Superior Court of Muscogee county, by the heirs of Martin Brooks, against John Quin, John Padget and Isaac Williams, to recover Lots Nos. 72 and 76, in the City of Columbus.   The defendants were the tenants of Daniel McDougald, deceased.   Mrs. Ann E. Mc-Dougald, as the administratrix of her husband, Daniel Mc-Dougald, filed her bill, representing, amongst other things, that her intestate, in his life-time, to-wit: on the 20th of April, 1840, executed a deed to the lots in dispute, to Martin Brooks, the ancester of the plaintiffs, to enable Brooks to claim these lots for McDougald, during his temporary absence from the State, provided any attempt should be made to disturb the property.   And she charges, that the conveyance was intended merely to operate as a power of attorney, for this purpose, and for none other, whatever.   That while it was true, that the Legislature, at its previous session, in December, 1839, had passed an Act authorizing a claim to land to be interposed by an agent or attorney at law, or in fact, for their principal ; yet this Statute was not known to her intestate at the time—it not having been published and circulated at the time the conveyance was made to Martin Brooks.   A copy of the deed made by McDougald to Brooks, was annexed to the bill, by which it appeared that it had been proven and admitted to record, upon the oath of Alexander McDougald, one of the sub-scribing witnesses, on the 3d of October, 1840.

The bill prayed that the deed might be cancelled, and the action of ejectment perpetually enjoined.

The answers of the defendants were filed, at the November Term, 1852, denying all knowledge of any of the facts charged in the bill, and which would, if true, impugn the validity of their title.   They admitted that they had never seen the origi-nal deed, but relied on a copy taken from the record book.

The complainant, by her solicitor, moved the Court to make an amendment to the bill, the main feature and object of which

was to allege, that the deed made to this property, never was delivered to Brooks, the feoffee; that it was lodged with Alexander McDougald, one of the subscribing witnesses, and brother of the feoffer, to be kept by him, until the exigency might arise, which would render it necessary to hand it over to Brooks; and that the crisis never having happened, the deed never was delivered, but had been, by the said witness, deposited in the Clerk's office for registration only; and that in this way, a copy had been obtained by the heirs of Brooks—the original never having been in the possession, power or control, either of the plaintiffs or their ancestor. The amendment further charged, that Brooks died insolvent, indebted to Daniel McDougald $10,000, or other large sum, and copies of the evidence of his indebtedness are appended to the bill; and the prayer is amended, by asking, that in the event that the Court should hold that the title to these lots has vested in Brooks, that before it shall be made available to his heirs, that the lots may be appropriated to the payment of Brooks debt to McDougald—there having been no representation on the estate of Brooks, and the plaintiffs suing as heirs at law, to recover the property.

The amendment contained other matter, which I deem it unnecessary to notice.

The defendants' solicitor moved to strike out this amendment, on the grounds:

*First.* That it was contradictory to the original bill.

*Secondly.* That it was allowed without any special cause having been previously shown to the Court; and

*Thirdly.* Because it had been improvidently granted.

The Court sustained the motion on the first ground, but overruled the other two.

Upon the representation of the defendants' solicitor, that he was unable to compare the original with the amended bill; and that it would be more consistent with equity practice to reject the amendment altogether, and compel the complainant's solicitor to present it in an unexceptionable form. The Court adopted this suggestion, and rejected the amendment *in toto.*

It was then moved by complainant's solicitor to re-instate the amendment, corrected in accordance with the decision—that is, striking out so much and such parts thereof, as contradicted the original bill. But this application was refused.—Why, we are at a loss to imagine. The only objection sustained to the amendment, when it was first argued and adjudged, was, that it was contradictory. If the amendment had' been so modified as to make it consistent with the original bill, we cannot comprehend why it should not have been allowed.

[1.] But waiving this narrow view of the subject, we propose to consider it on broader grounds. It does not necessarily follow, that because the statements in the original and amended bill are contradictory, that the latter will necessarily be rejected. The facts, as set forth in the original bill, may be wrong, and it may be the purpose of the amendment to rectify these errors.' It will, in that event, be substituted for the original.

[2.] In Courts of Justice, Equity and Common Law, the time will come, *and now is*, when mis-pleading will never be allowed to prejudice any party; but every case will be ultimately tried upon its real and substantial merits.

[3.] Judge Story, in his work on Equity Pleading, Chapter XX, § 884, in treating of the circumstances under which amendments are allowed to be made, says: "And first, as to amendments by the plaintiff. Amending the bill may be useful for various purposes : *for the correction of mistakes ; or for the suppression of impolitic admissions in the original statements ;* or for adding new.parties ; or for inquiring into additional facts ; or for the further investigation of facts, which have been only partially disclosed ; or for putting in issue new matter stated in the answer".

[4.] But passing this point by, does there exist in this case such a contradiction as that no decree could be rendered ?—We think not. The original bill alleges, that the deed was made to Martin Brooks, to enable him to claim the lots.—The amendment charges, that it was left in the care and custody of Alexander McDougald, to be turned over to Martin Brooks for that purpose. Now, whether this latter aver-

ment constitutes Alexander McDougald the agent of Brooks, to receive and hold the deed, or makes the deed itself an *escrow*, practically, it makes no difference. In either aspect, it was to be used for the same object, and for none other. And the relief prayed, was the same, namely : the cancellation of the conveyance.

[5.] Where the matter of the bill has not been put in issue with sufficient precision, the Court will always give liberty to amend the bill, for the purpose of making the necessary alteration. (2 *Bro. P. Cas.* 194.)

[6.] Great latitude is allowed to a complainant in making amendments. The most restricted doctrine to be found upon this subject, I find, after careful examination, is the case of *Verplank vs. Meret,* (*Ins. Co.* 1 *Edw.* 46,) once cited, if I recollect right, by this Court, with approbation, at least as to some of its principles. In England, the Courts have gone to the extent of permitting a bill to be converted into an information. (*President of the St. Mary's Magdalen vs. Sibthorp*, 1 *Russell*, 154.) It has also been held there, where a plaintiff filed a bill, stating an agreement, and the defendant, by his answer, admitted that there was an agreement, but different from that stated in the bill, that the plaintiff might amend his bill, abandoning his first agreement, and praying for a decree according to that admitted by the defendant. (*Lindsay vs. Linch*, 2 *Sch. & Lef.* 9.) A bill for account against the defendant, as bailiff or agent, has been allowed to be changed into a bill for the foreclosure of a mortgage. (*Smith vs. Smith*, *Cooper*, 141.) And I recollect to have seen cited a case by Mr. Daniel, where a bill to *set aside* a deed, was converted, by amendment, into a bill to *set up* the instrument. This is entirely changing the case, and making the bill a perfectly new one, which it is laid down in 1 *Edw.* 46, cannot be done.

[7.] Mr. Daniel, in his Chancery Practice, title "Of Amending Bills", says, "When a plaintiff has preferred his bill, and is advised that the same does not contain such material facts as are necessary, he may alter it by inserting new matter, subsisting at the time of exhibiting the bill, of which he was not then

apprized, *or which he did not think necessary to be stated*".—
(1st *vol. p.* 454.) Now, whether the alteration, slight as I have
shown it to be, is put upon the ground of the disclosure made
by the defendants' answer, that Martin Brooks never got pos-
session of the original plea, or from information derived from
Alexander McDougald, after the original bill was filed, or upon
the ground that the original bill was prepared under a mistake
or misconception of counsel, either as to the facts or the rights
of his client, the amendment is equally admissible, under any
and all of these principles.

[8.] Under the modern doctrine, amendments are more a
question of cost than anything else. Where a different case is
made by the amendment, the plaintiff should be taxed with the
costs, and the defendant made to pay no more than he would
have been put to had the bill been brought right originally.

Thank God that the night of pedantry and quibble is passing
away, and the morning of reason and common sense is break-
ing brightly upon the world ! The men of 1799 disdained to in-
voke the spirits of departed oracles, in search for rules for our
Courts of Justice. But a *middle age* intervened, and in spite
of our Act of 1818, and other Statutes of amendments, we
have been bandied "from Coke to Cooke—from Year Books to
Dome Books—from *ignotum* to *ignotius*", until we had become
the most *law-ridden* people upon the face of the earth. Mod-
ern law reform is sweeping away all of these miserable cob-
webs of antiquated nonesense, and life, liberty, reputation and
property are appreciated too highly to allow them to rest on
"legal riddles and paradoxes". Forms are no longer any-
thing—substance is everything.

Let us examine the other objection to the amendment, not-
withstanding it is doubtful, I think, whether it was ever intend-
ed to be sustained by the Court. And that is, whether it is
necessary to make a preliminary showing to the Court, upon
oath, before leave can be had to amend a sworn bill. Con-
cede the practice to be as here contended for, and apply the
rule in its most rigid form, as to be found in the case in 1 *Ed-
wards*, already referred to, and also in *Rogers vs. Rogers*, (1

*Paige*, 424,) and *Whitemarsh vs. Campbell*, (2 *Paige*, 67,) namely : that when a plaintiff wishes to amend a sworn bill, he must state the proposed amendments, distinctly ; and that he must also swear to the truth of the proposed amendments, and render a valid excuse for not incorporating them in the original bill ; and, in addition to all this, hold that the application to amend, must be made as soon as the necessity for such amendment is discovered : I ask, has there not been a substantial compliance with all these stringent requisitions, in this instance ?

The answers disclosing the necessity for the amendment, were filed at the November Term, 1852. The amendment was offered at the same term. The amendment was allowed to be filed, reserving, it is true, the benefit of exception to defendants' solicitor. But in the amendment which is sworn to, the reasons are distinctly set forth, which made the filing of it necessary, and the excuse is rendered, why the new matter was not incorporated in the original bill.

[9.] It will be recollected, moreover, that the complainant, Mrs. McDougald, is acting representatively. She is not presumed to be as cognizant of the facts which constitute the equity of this bill as her deceased husband was in his life-time.—She is entitled to more indulgence, on this account.

[10.] I would simply remark, as it respects the alternative prayer in the bill, that while the vendor's lien might be recognized and protected in this proceeding ; and to that extent the complainant would be entitled to the relief which she seeks. But, for myself, I should entertain serious doubts whether the Court could go beyond this.

It is admitted that the estate of Martin Brooks is insolvent, and that it is unrepresented. Why any portion of the debt due Daniel McDougald, other than for the purchase-money of the land, should be paid by his heirs at law, of Brooks, in preference to other outstanding debts of equal or higher dignity, we cannot very clearly see. We express no decided opinion upon this subject, however, at this stage of the case.

Judgment reversed.