MORAN, *Appellant*, v. MORAN *et al.*

### Division One, February 19, 1894.

**Trust:** CORPORATE STOCK, ASSIGNMENT OF.  The evidence in this case examined and *held* to show that the corporate stock in controversy was assigned to plaintiff in trust for another and that it was subsequently, with the consent of the latter, transferred to his wife on a like trust.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*H. J. Grover* for appellant.

(1) The purchase by William Moran of ten shares of stock from John Moran on December 21, 1881, for five thousand dollars is fully established.   (2) The testimony and suggestions brought forward to show that the original transaction and purchase by William was unreal and fictitious, are insufficient and in the presence of all the circumstances utterly fail to taint that transaction even with suspicion.   (3) The settlement of July 23, 1891, is not binding, and is voidable, even as to the matters covered by it, and will be disregarded by a court of equity upon mere suggestion.   (4) The ten shares sued on were not embraced in the settlement.

*D. P. Dyer* for respondents.

The evidence in the case shows most clearly that the reason for the transfer of the stock in question,

from John to William in December, 1881, was to keep it out of the reach of John's creditors. It also shows that at the time of this transfer Michael Moran was president of the company and William its treasurer; that after the assignment of the stock certificates there was no change in the affairs of the company so far as John was concerned. He continued in the same position as before and received the dividends on this stock as regularly as the other stockholders received theirs. It was paid to him by William, the treasurer, from December, 1881, to December, 1885, by Michael from December, 1885, to December, 1886, and by Lizzie until 1889 when the stock was transferred to the wife of John and from that time to this paid to her. There never was any claim made to this stock by William until this suit was brought. He seeks to take advantage of a fraud committed by John on his creditors, and to which fraud he himself was a party.

BLACK, P. J.—This is a suit in equity brought by William E. Moran to establish title to ten shares of stock in the Moran Bolt and Nut Manufacturing Co. a corporation organized under the laws of this state; and to recover judgment for the dividends which had accrued thereon. The defendants are Lizzie Moran, John Moran, and the Moran Bolt and Nut Manufacturing Co. The corporation was organized in September, 1881, with a capital stock of sixty shares of $1,000 each. The sixty shares were taken and owned by six brothers and sisters, namely, Michael, John, Susan, Lizzie and William Moran and Jennie Gorman, each having ten shares. At that time, and long prior thereto, they all resided in the same house. The men carried on the bolt and nut business and the women managed the household affairs.

The material averments of the petition are that

William purchased the ten shares owned by John and paid John a valuable consideration for them and that they were duly transferred upon the books of the company; that the defendants caused plaintiff to be confined in an asylum from 1887 to 1891 as an insane person, and during that time fraudulently caused the ten shares to be transferred to Lizzie and in like manner caused her to transfer them to Elizabeth Moran, the wife of defendant John Moran. The defendants admit the assignment of the shares from John to William in December, 1881, but they say the transfer was made without consideration and for the purpose of placing them out of and beyond the reach of the creditors of John, who was financially embarrassed; that William, with the consent of John, assigned the shares to Lizzie on the eighteenth of December, 1885, to be by her held for John, and she transferred them over to Elizabeth Moran, the wife of John, in 1889.

The contest is really between the two brothers, William and John. It stands admitted on all hands that John assigned these ten shares to William on the twentieth of December, 1881, and the first, and indeed the real, question in the case is one of fact, and that is, whether William purchased the shares or simply took them to be held for the use and benefit of his brother John.

The evidence discloses the following facts: The sheriff levied an execution in favor of a Mr. Johnson, and against John Moran, on the ten shares. Johnson became the purchaser of three of them at the execution sale. He commenced a suit against the corporation to compel it to transfer the three shares to him. John and William were parties defendant to that suit. It came on for trial in 1883. William and John and John Gorman and John Griffin testified in behalf of the defendants that they were all present when John sold the

shares to William and that William paid John $5,000 in cash for them. Johnson, in view of this evidence, dismissed his suit.

On the trial of the case now in hand, the plaintiff put in evidence the testimony of John Moran, John Gorman and John Griffin, given in the prior suit brought by Johnson. William and Michael testified in the present case. Their evidence is to the effect that William paid John $5,000 in cash for the shares. On cross-examination as to where William got the money, they said he had been saving it for years, that he kept it in a bureau drawer in his room during the day and at night he put it under the mattress.

John Moran and John Gorman did not testify on the trial of this case. John Griffin, the same person who give evidence for the defendants in the Johnson suit, testified that he was present at the time John transferred the ten shares of stock to William; that he got the $5,000 from his father and took it to the Moran shop and gave it to William, who handed it to John, and it was then handed back to him, and he took it back to his father's. He admits he knew the whole thing was a sham when he testified on the prior occasion. Lizzie Moran and Jennie Gorman testified that their brother William did not have $5,000 or any such a sum of money; that he always said the stock belonged to John. Their evidence is clear and direct to the effect that William paid nothing for the stock and that he held it for John.

The evidence discloses the following additional facts: John was a director and the secretary of the company at the time he transferred the ten shares to his brother William; he then resigned his office of director, but continued to be secretary. He continued to work with his other brothers just the same as before the transfer. William was treasurer from 1881 to December

1885, and during all that time paid John a dividend of $50 per month on these ten shares just as he did to the other shareholders. Michael, the chief witness for William in this case, was treasurer from December, 1885, to December, 1886, and during that time he paid John dividends on these ten shares, and John or his wife received the dividends from that date to the commencement of this suit in 1891. On the eighteenth of December, 1885, William assigned the ten shares to Lizzie to be by her held for John. He married on the twenty-second of the same month. Though he had become somewhat dissipated at that time, it is shown to our entire satisfaction that he knew what he was doing when he made the assignment to Lizzie.

This case calls for very few additional observations. It is shown beyond a shadow of a doubt that the monthly dividends were paid to John on these shares for years after the assignment of them to William in 1881. William, the plaintiff in this suit, as treasurer, paid the dividends to John from 1881 to 1885. John's relation to the corporation was not changed in the least, save he ceased to be a formal director, but he continued to exercise as much control over the affairs of the concern as he did before. These circumstances are all inconsistent with absolute ownership of the stock in William. Besides this, the evidence of Lizzie Moran and Jennie Gorman shows that William did not have $5,000 or any such a sum of money, and that he held the shares for John. These witnesses must have known what the real character of the transaction was. When we conclude, as we must, that the evidence given in behalf of the defendants in the Johnson suit was untrue and false, this case has nothing upon which to stand, except the testimony of Michael Moran, and that is so inherently weak that no reliance can be placed upon it. In reaching this conclusion we lay

Griffin out of view. It is true John Moran was one of the witnesses for defendants in the Johnson suit, but it does not follow that plaintiff should recover in this case, because he and John testified to what was not true in that case. William took the stock in trust for John, and with the consent of John turned it over to Lizzie on a like trust, and that is the end of the matter so far as William is concerned.

Much other evidence was introduced concerning subsequent events. It adds nothing to the plaintiff's case, and we do not feel called upon to consume time in reciting it. The judgment is affirmed. BARCLAY, J., absent. The other judges concur.