W. B. ALLEN v. WILMINGTON & WELDON RAILROAD
COMPANY.

*Railroads—Common Carriers—Ejection of Passengers on
Wrong Train—Punitive Damages—Action in Tort—
Trial—Practice—Issues.*

1. One who boarded a train, and upon offering a ticket to a station
at which the train was not scheduled to stop and refusing
to pay the fare to the next station beyond, at which the
train would stop, was ejected from the train, cannot recover
punitive damages for the *tort* where the ejection was done
without insolence or undue force.

2. In the trial of an action it is not error to eliminate from an
issue tendered superfluous words and words which give to it
a construction not warranted by the testimony.

3. A conductor of one train is not bound by the advice or
instructions given by the conductor of another train, if in
conflict with instructions from the company.

4. Where an action is brought and tried as an action *in tort* it
must be reviewed on appeal on the same theory, and this
Court will not undertake to determine whether it might not
have been tried favorably for the plaintiff, as an action for
breach of contract, even though the complaint contain
averments which would sustain such an action.

CIVIL ACTION, tried before *Robinson, J.,* and a jury, at
May Term, 1896, of HALIFAX Superior Court.    The facts
sufficiently appear in the opinion of Associate Justice
FURCHES.    There was a verdict for the defendant, and
plaintiff appealed from the judgment thereon.

*Messrs. David Bell* and *Mullen & Daniel,* for plaintiff
(appellant).
*Messrs. MacRae & Day, contra.*

FURCHES, J. : In reviewing this case upon the record,
and the manner in which it was presented and tried in the

court below, the judgment must be affirmed. The complaint was evidently intended to be an action of *tort* and it was so tried.

The plaintiff bought a through ticket at Goldsboro, from that place to Enfield, on defendant's road. After he bought the ticket a friend of his, thinking the train did not go through to Enfield that night, made inquiry of the defendant's ticket agent at Goldsboro as to whether that train, (called the " shoo-fly ") went through to Enfield that night, and was told it did. After plaintiff boarded this train he was told by the conductor, upon presenting his ticket, that this train did not go to Enfield but stopped at Rocky Mount, but was informed by the conductor that another train passed Rocky Mount, and for plaintiff to take that train ; that it did not stop at Enfield, but for plaintiff to take that train, and as he had a ticket for Enfield the conductor would have to stop and let him off. Under these circumstances and this advice plaintiff boarded this train as it passed Rocky Mount. Upon presenting his ticket to the conductor soon after leaving Rocky Mount he was told that the train did not stop at Enfield, and the conductor refused to take his ticket unless the plaintiff would pay the additional fare to the next station, where his train would stop. This the plaintiff refused to do, and the conductor stopped the train and asked the plaintiff to get off. This he said he would not do unless he was put off, and told the conductor to take hold of him, which he did, and plaintiff got off. It is alleged in the complaint that plaintiff was rudely, insolently and with force and violence ejected from defendant's train. But plaintiff's own evidence, as well as that of the other witnesses, shows that this was not the case.

Upon this state of facts plaintiff insisted that he was entitled to punitive damages for this wrongful, violent and

forcible ejection.   On the trial the plaintiff tendered three issues which he asked the court to submit to the jury. The first was, " Did the defendant company, *through its conductor*, wrongfully eject the plaintiff from its cars on the 17th of December, 1893 ?

The second issue was in the same language as the first, except it added the words " rudely, wantonly, forcibly and wickedly " eject the plaintiff from its cars on the 17th of December, 1893.   And the third, " What damage has the plaintiff sustained by such ejection ? "

The court did not submit the first and second issues in the precise language in which they were tendered, leaving out of the first issue " through its conductor," rejecting the second issue and giving the third in the language in which it was tendered by the plaintiff.

We see no error in this ruling.   The first issue is in substance the same as it was in the language employed by plaintiff, only improved by rejecting the surplus words, " through its conductor."   The second issue was substantially the same as the first, except it added additional adverbs as to the force used to eject the plaintiff from defendant's cars.   We fail to see that refusing to submit this issue prejudiced the plaintiff.   If it had been submitted it would have devolved upon the plaintiff to show from the evidence that it was true.   And upon an examination of the evidence (the whole of which is sent up as upon a non-suit) we fail to find any evidence to sustain the allegations of force described in this issue.   The plaintiff's own evidence does not do so.   The third issue was submitted to the jury in the same language as tendered by the plaintiff.

The plaintiff tendered three prayers for instructions, all asking the court to charge that plaintiff was entitled to recover punitive damages for the wrongful ejection of

plaintiff from defendant's cars after leaving Rocky Mount on the night of the 17th of December, 1893. The court declined to give these instructions, and we see no error in this, as there was no force used by defendant in making this ejection, and as plaintiff was wrongfully on this train. If he had been rightfully on the train, having paid his fare or being ready to pay his fare to the next station where the train stopped, any ejection would have been wrongful—*a tort*—and plaintiff would have been entitled to recover.

The opinion of the conductor on the " shoo-fly " train that the plaintiff could take the fast train, and as he had a ticket to Enfield the conductor would be bound to stop the train and let him off, was misleading to the plaintiff. But the conductor on the " shoo-fly " train had no right to instruct the conductor on the fast train, and he was not bound by it. In fact he had no right to do so if the advice of the conductor on the " shoo-fly " was in conflict with his instructions from the company. 1 Wood Ry. Law, Sec. 164; Mecham on Agency, Secs. 273 *et seq*

As plaintiff was wrongfully on this fast train without paying or offering to pay his fare from Enfield to the next station where the train was scheduled to stop, and in fact refused to pay it, it was not only the right but the duty of the conductor to put the plaintiff off.

But he must do this without using unnecessary force and without insolence. *Railroad* v. *Nixum*, 19 Am. Repts., 703; 2 Fiel's Lawyers' Briefs, 59, 60; 34 Atlantic Reports, 880.

This seems to dispose of the case as presented by the record and arguments. But it was suggested in conference that the plaintiff probably had a cause of action for breach of contract for failing to carry him through to Enfield that night—the ticket not allowing him to stop over, and that,

although the complaint appears to have been drawn *in tort*, there might be sufficient averments in the complaint to constitute a cause of action on contract under *Stokes* v. *Taylor*, 104 N. C., 394, and that line of cases. And we are not prepared to say that there are not.

But in these cases of defective statement of cause of action the actions were tried upon the true ground of complaint, and upon appeal this Court held that where sufficient appeared in the complaint to make out the case tried, this Court would sustain the judgment. But that is not the case here. The complaint is not only defective in stating a cause of action on contract, but the case was tried as a *tort*, and it was so argued before us. The plaintiff's brief commences with the following paragraphs:

" This was an action brought by the plaintiff to recover damages from defendant for being wrongfully ejected from its cars on the night of the 17th December, 1893."

" The only thing to consider in this appeal is, Did the plaintiff make out a case from his standpoint? "

And as we find no error in the court trying this case as a *tort* for ejecting the plaintiff from defendant's cars—the plaintiff insisting that *tort* was the action he brought and tried, and insisting that this is the only thing to be considered in this appeal—we do not think that it would be fair to the parties or to the court that we should look out to see if it might not have been tried on a different theory with different results. While we would not feel ourselves bound by an erroneous admission of a proposition of law, we must have respect to the manner in which parties present and try their cases.

                                      Judgment Affirmed.