NATIONAL GRANITE BANK *vs.* THEODORE H. TYNDALE, administrator.

Norfolk.   March 8, 1901. — June 19, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Practice, Civil,* Election of alternate remedy.   *Contract,* Common counts.   *Evidence,* Conclusions of fact, Declarations of deceased persons.

The payee of an indorsed promissory note brought an action against the maker with counts on the note and for money lent and money had and received. While this action was pending he brought an action against the indorser. This court deciding that the note was void but that the payee had a cause of action on the common counts, the payee discontinued his suit against the indorser on the note and proceeded in his suit against the maker on the count for money lent. *Held,* that the plaintiff's concurrent pursuit of his alternate and inconsistent remedies waived neither of them, and that, by suing the indorser on the note while his suit against the maker was pending, he had not elected to rely on the note so as to prevent him from recovering on the common counts when the note was held to be invalid.

In an action by a bank for money lent, the cashier of the plaintiff was asked, what transaction took place between the plaintiff and the defendant, and answered "We on December 29th made a loan to" the defendant, and further stated that he personally attended to the transaction. The answer was objected to on the ground that the witness was permitted to state a conclusion in describing the transaction as a loan, and that whether a loan was made was a question solely for the jury. *Held,* that the answer was the statement of a fact within the personal cognizance of the witness, and properly admitted.

In an action by a bank for money lent upon a note held to be void because made by the defendant to her husband, the defendant died between two trials of the case. At the new trial, the administrator of her estate, then the defendant, offered in evidence the declarations made by his intestate after the action was brought, to the effect that she never borrowed any money of the plaintiff. The declarations were offered under St. 1896, c. 445, as in an action against the administrator of a deceased declarant in which the cause of action was supported by oral testimony of a promise or statement made by the deceased person. *Held,* that the declarations were not admissible under St. 1896, c. 445, because it did not appear that the action was supported by oral testimony of a promise or statement made by the intestate. *Whether,* the declarations were admissible under St. 1898, c. 535, was not considered, because they were not so offered.

CONTRACT, with counts upon three promissory notes and for money lent and money had and received, as stated in the opinion of the court.   Writ dated July 17, 1896.

The third trial of this case in the Superior Court was before *Bishop,* J.   The plaintiff had a verdict in the sum of $16,912;

and the defendant alleged exceptions, of which four were argued. The first and second are described in the opinion of the court. The third and fourth were as follows.

One Claflin, the cashier of the plaintiff, was the only witness for the plaintiff. His testimony, which was the subject of the third exception argued, was as follows :

" *Q.* You may proceed now. I ask you what was the transaction? *A.* We on December 29th made a loan to Mrs. Isabella S. Whicher. — *Q.* What amount? *A.* Of $15,000. — *Q.* Did you personally attend to it? *A.* I did. — *Q.* What did you do yourself in reference to it? *A.* I gave Mrs. Isabella S. Whicher a check, or cashier's check of $15,000, payable to her order."

The defendant excepted to the answer containing the statement that the bank made a loan to Mrs. Whicher, on the ground, that permitting the witness to characterize the transaction as a loan was erroneous ; that the question whether a loan was made was a conclusion, and was solely for the jury.

The ground of the fourth exception argued was the exclusion of evidence of declarations made by Mrs. Whicher, the original defendant and the intestate of the present defendant, the administrator of her estate.

The defendant offered evidence of the declarations of Mrs. Whicher, all made after this action was brought, and some after the plaintiff's contention at the first trial that a loan had been made to her, as follows: " That upon being informed by her junior counsel that it was apparent that the bank was endeavoring to make a sort of two-headed affair of it, if they could not prove that she was liable upon the notes, that they were then to endeavor to show that she had borrowed money to the amount of $15,000, she replied, ' Why, of course they cannot say anything of that sort, for I never borrowed any money of the bank.' That upon Mr. King, the president of the bank, testifying at the former trial to the fact of a loan made to her through Louis E. Whicher, she said to her counsel, ' Why, that can't be so, for such an idea never entered my head. Louis asked me if I would sign some notes as a mere matter of form, and told me that I would never hear of it again. When I went into the office on that day I sat at the table and he laid before me on the table some papers and said, " Write your name there, Aunt Isabella," and I did so,

and I never heard of the matter again after I signed my name in the office that day until Mr. King came to the house.' That to another witness she said, ' I never had any money. ' I never borrowed any money from the Granite Bank.' That when she signed these papers she had no idea that any loan was being made with her. That she said in substance that Louis E. Whicher had no authority from her to procure any loan for her. To another witness, that she was nonplussed that the bank claimed that they had made her any loan. That she repeatedly said she never went near the bank; that she never in any way, form, shape or manner borrowed any money, or, what they were pleased to term, a loan. She spoke to one of Mr. King as having deliberately lied upon the stand, and said to another that Mr. Claflin and Mr. King both lied in the matter of their testimony to the court."

The foregoing evidence was offered under St. 1896, c. 445, as in an action against the administrator of the deceased declarant in which the cause of action was supported by oral testimony of a promise or statement made by the deceased person. The evidence was excluded by the judge, and the defendant excepted.

The defendant introduced the testimony of Mrs. Whicher given at the first trial of this action in which she denied having ever stated that she had borrowed $15,000 from the Granite Bank and lent it to T. A. Whicher and Company, and testified that nothing was said at any of the interviews about a loan by her at the Granite Bank or to her at the Granite Bank; that she had never made any application to the Granite Bank for a loan, that the Granite Bank had never approached her at any time to lend her any money, and that she had never authorized or directed any one to raise a loan for her at the Granite Bank.

*S. H. Tyng*, for the defendant.

*R. M. Morse & C. H. Hanson*, for the plaintiff.

MORTON, J.   This is an action of contract to recover the sum of $15,000. The declaration contains counts upon three notes of $5,000 each, and also counts for money lent and money had and received. The case has been twice before this court. The first time it was held that the notes were void because made payable by the defendant's intestate to the order of her hus-

band and the defendant's exceptions were sustained. *National Granite Bank* v. *Whicher*, 173 Mass. 517. At the second trial upon an offer to show that the money was lent to the defendant's intestate the court ruled that the plaintiff could not recover upon the common counts for money lent or money had and received and the plaintiff's exceptions were sustained. 176 Mass. 547. The case has now been tried a third time, — the plaintiff relying wholly upon the count for money lent. There was a verdict for the plaintiff and the case is here upon the defendant's exceptions to the admission and exclusion of certain evidence, to the refusal of the presiding judge to give certain rulings and to certain rulings or instructions that were given.

We take up the exceptions in the order in which the defendant has argued them on his brief. The first relates to the record of a suit which was brought by the plaintiff against Thomas A. Whicher, one of the indorsers of the notes, in March, 1898, and which was discontinued in October, 1900. The second relates to an agreement made in November, 1898, between the plaintiff and Louis E. Whicher, another indorser, in which the plaintiff agreed not to sue him upon the notes, though "reserving . . . all rights against . . . other parties on said notes," in consideration of Whicher's agreement to pay on or before January 1, 1894, any amount remaining unpaid on the notes, not exceeding $3,750. These were offered by the defendant and admitted by the court *de bene*. The exceptions do not state for what purpose they were offered. At the close of the evidence the court excluded them and ruled "that neither the bringing of said action nor the making of said agreement was such an election to treat the notes in suit as valid as would prevent the plaintiff from maintaining this action." The defendant excepted to the exclusion of the record and agreement, and to this ruling. There is nothing in the exceptions to show that either at the time of the ruling or at any other time in the course of the trial the defendant claimed that the record and agreement were admissible for any other purpose than to show an election on the part of the plaintiff to treat the notes as valid. The court evidently understood that that was the purpose for which they were offered and ruled accordingly. If the defendant

relied on any other ground of admissibility he should have then called the attention of the court to it; not having done so he is confined to their competency on the question of election. We think that the ruling of the court was right. The present action was brought nearly two years before the suit against Thomas A. Whicher was instituted and was pending when the writ was sued out in that case. The declaration contained counts on the notes and also counts for money lent and money had and received. At the time therefore when the plaintiff brought its action against Thomas A. Whicher as indorser it was pursuing in this action its remedies against the defendant as maker of the notes and on the common counts for money had and received and money lent, and it has continued to pursue and is now pursuing the remedies to which it was and is entitled in this action. It is difficult, therefore, to perceive how by bringing the action against Thomas A. Whicher as indorser the plaintiff has manifested its determination to rely upon the notes. At the time when it brought that action it was relying on its right to recover for money lent as well as on the notes, and as the court says in *Whiteside* v. *Brawley*, 152 Mass. 133, in such a case "as the plaintiff takes both positions he cannot be said to have elected." The situation disclosed by the evidence is the case of a party pursuing concurrently all of its remedies until the court decides which remedy it is entitled to and until it obtains satisfaction and not a case of election. If the plaintiff had discontinued the present action after bringing suit against Thomas Whicher, and after it knew that the defendant's intestate denied her liability, it is possible that it might be held to have elected to rely upon the notes. *Terry* v. *Munger*, 121 N. Y. 126. But it did not do that. On the contrary after the decision of this court in this action that the notes were invalid, it discontinued the action against Thomas, and pursued its remedy on the count for money lent which had always been a part of the declaration.

The agreement with Louis E. Whicher stands no better, we think, than the record of the action against Thomas, and was rightly excluded for like reasons. Taken in connection with this suit which was then pending against the maker of the notes, and with the suit that was brought against Thomas, it manifests

not a choice of remedies nor an intention to rely upon the notes to the exclusion of other remedies, but a purpose on the part of the plaintiff to avail itself of all its rights and remedies.

The next exception is to allowing the plaintiff's cashier to testify in answer to the questions, "Did the bank in December, 1891, have any business transaction with Mrs. Whicher?" and "what was the transaction?" "We on December 29 made a loan to Mrs. Isabella S. Whicher." We see no error in the admission of the testimony. The answer was the statement of a fact within the personal cognizance of the witness.

The last exception which the defendant has argued relates to the exclusion of evidence which was offered of declarations made by Mrs. Whicher, the defendant's intestate. These were offered under St. 1896, c. 445, which provides that "In the trial of an action against an executor or against an administrator of a deceased person in which the cause of action is supported by oral testimony of a. promise or statement made by said deceased person, evidence of statements written or oral made by said deceased person . . . tending to disprove or show the improbability of such statement or promise having been made, shall be admissible." Evidence was subsequently admitted of what Mrs. Whicher testified to at the last trial and it may be doubted whether if the evidence that was offered and excluded had been admissible, the defendant was harmed by its exclusion. But we think that it was rightly excluded. The evidence was admissible only in case the cause of action was supported by oral testimony of a promise or statement made by Mrs. Whicher. There was no such testimony and therefore the statements made by her were inadmissible. Whether it was admissible under St. 1898, c. 535, we need not consider. It was not so offered.

The defendant has not argued any of the other exceptions that were taken and we treat them as waived, except so far as included in the matters that have already been considered. We see no error in the instructions that were given, or in the refusal or omission to instruct as requested.

*Exceptions overruled.*