G. W. WARREN AND WIFE v. B. L. SUSMAN, THE WASHINGTON HORSE EXCHANGE COMPANY, AND FELIX LEE.

(Filed 24 March, 1915.)

1. **Mortgages—Power of Sale—Conversion—Damages.**

Where a mortgage of real and personal property contains no power of sale as to the latter, a seizure and sale thereof by the mortgagee amounts to a conversion, making him liable for their actual value, and also for the value of his use of the chattels.

2. **Mortgages—Trusts and Trustees—Sales—Mortgagee a Purchaser—Equity —Election.**

The mortgagee with relation to the mortgaged premises is regarded as a trustee for the mortgagor, and at the sale of foreclosure, under a power contained in the instrument, is not permitted to speculate upon his trust or make an unfair profit out of it; and when he has become the purchaser at his own sale, it is optional with the mortgagor to have the transaction set aside and the property returned to the trust fund; and if the trustee insists upon the validity of the sale and has conveyed the property to a third person, who, as he insists, is an innocent purchaser for value and has acquired an absolute title, the mortgagor may recover the value of the land thus conveyed or a fair compensation for the breach of the trust.

3. **Same—Principal and Agent.**

Where one acting as an agent for the mortgagee has purchased the mortgaged property at a foreclosure sale on behalf of his principal, the same equities apply as where the mortgagee himself has become the purchaser.

4. **Same—Appeal and Error.**

Where a mortgagee has bid in the mortgaged property at his foreclosure sale, and in the mortgagor's action against him for the breach of his trust in so doing, the trial proceeds only upon the theory that a fair compensation or the value of the property can be recovered, with allegation and proof sufficient to sustain it, instead of the restoration of the property itself to the mortgagor, the Supreme Court, on appeal by the mortgagee from an adverse judgment, will pass upon the case as it was tried in the lower court.

WARREN *v.* SUSMAN.

5. Mortgages—Trusts and Trustees—Sales—Mortgagee a Purchaser—Equities.

> While in exceptional cases a mortgagee may be permitted to bid in mortgaged property at his own foreclosure sale to avoid loss to himself and the mortgagor, it must be done in good faith and in recognition of the mortgagor's right to avoid the sale, if he elects to do so; and where the mortgaged property consists of land and mules, the inadequate price, brought by the latter, to pay the debt, will not alone justify the mortgagee in bidding in the land at his own foreclosure sale, and deny to the mortgagor his right to declare the sale void.

6. Same—Election.

> Where a mortgagor in his original complaint seeks to set aside a sale of foreclosure wherein the mortgagee became the purchaser, and to restore the property to the trust fund, and the mortgagee, in his answer, alleges that the sale was valid, and also that he had conveyed the property to an innocent purchaser for value, who had acquired thereby a good title, and upon amendment allowed by the court the trial proceeds, without objection, upon the issues then raised, which are confined to a recovery of compensation for the breach of trust alleged, the doctrine of election between inconsistent causes of action has no application, and a judgment in plaintiff's favor will not be set aside on appeal on that ground.

7. Same—Pleadings—Amendments—Inconsistent Causes—Estoppel.

> In an action brought by a mortgagor to set aside a foreclosure sale whereat the mortgagee became the purchaser, the plaintiff prayed for his relief that the property thus sold be restored to the trust fund, and the defendant resisted the equity sought, alleging that the sale was valid, and, further, that title to the property had since been acquired by an innocent purchaser for value. The court, without objection, allowed plaintiff to amend and set up his equitable right to compensation for the breach of trust by the mortgagee. *Held*, the plaintiff was not concluded by the relief prayed for in the original complaint from setting up his equity in his amendment thereto, under the doctrine of election between inconsistent causes of action; and the defendant, by its answer and not objecting to the issues raised or to the proceedings at the trial under the amendment, is estopped to rely upon that equitable principle on appeal. The Court further held that the mortgagor was not required to take chances on the result of the issue as to the third party being an innocent purchaser for value, and the doctrine of election, therefore, did not apply.

8. Appeal and Error—Exclusion of Evidence.

> Exception to the exclusion of evidence in the court below will not be considered on appeal unless its nature is made properly to appear, so that the appellate court can decide upon its competency.

BROWN, J., dissenting.

APPEAL by defendants from *Peebles, J.,* at October Term, 1914, of PAMLICO.

This action was brought to recover the value of certain mules and land sold by defendant, the Washington Horse Exchange Company,

under a mortgage given by the defendant to it. There is a power of sale in the mortgage, but it is restricted to the land. It was executed to · secure $500, the price of the two mules, for which two notes of $250 each were given on 9 March, 1910, one payable 1 November, 1910, and the other on 1 November, 1911. The transaction took place in Pamlico County where the land is situated and where the mortgage was registered. Plaintiff changed his residence to Carteret County and carried the mules with him. They were seized by the defendant, the mortgagee, carried to Washington, Beaufort County, N. C., and there sold at public outcry for $225. The land was afterwards sold in Pamlico in like manner and bought by the defendant, the mortgagee, through an agent, for $325.

The jury returned the following verdict:

1. What was the value of the mules described in the complaint at the time the said mules were taken into the possession of the defendant Susman and the Washington Horse Exchange Company? Answer: "$500."

2. What is the highest fair hiring or rental value of said mules? Answer: "$50 per year."

3. What was the value of the lands described in the complaint at the time the same was taken into the possession of the defendants? Answer: "$800."

4. What is the highest rental value of· said lands since the defendants took the same into their possession? Answer: "$25 per year."

5. Did E. L. Stewart buy in said lands for the Washington Horse Exchange Company? Answer: "Yes."

6. Did said Stewart pay any money for said lands? Answer: "No."

Judgment was entered on the verdict, and defendant appealed.

*Abernethy & Davis for plaintiff.*
*Z. V. Rawls and Small, MacLean, Bragaw & Rodman for defendant.*

WALKER, J., after stating the case: The mortgagee had no power of sale as to the mules, and when the defendant seized and sold them to a third party, it amounted to a conversion and rendered them liable to the plaintiff for their real value. Otherwise if the defendant had sold them regularly under a decree of court or under some authority given to that end. *Bird v. Davis,* 14 N. J. Eq., 467. The jury have found that the mules did not bring a fair price at the sale made by the defendant, but, on the contrary, were worth more than twice the amount they brought at the sale. The defendant is also liable for the value of any use of the mules by it.

As to the land, defendant bought it for itself, though it acted indirectly by an agent. It is the same in equity as if it had bought in its own name. *Whitehead v Helen,* 76 N. C., 99. The plaintiff could elect to

have the sale set aside and the property returned to the trust fund, or ·recover of the defendant, who had sold and bought at the same time, in breach of his trust, the value of the land where the trustee insists on the validity of the sale and his right to retain the property, and has conveyed it to a third person, whose title he also insists is unassailable; otherwise the trustee would be allowed to speculate upon his trust and make an unfair profit out of it, which will not be tolerated by a court of equity. This is held to be the rule in *Froneberger v. Lewis,* 79 N. C., 426, where the subject is fully discussed. *Huston v. Cassidy,* 1 McCarter (N. J. Eq.), 320; *Smith v. Drake,* 23 N. J. Eq. (2 Beasley), 302. The *cestui que trust,* in making his election, is not required, in such circumstances, to take the property upon his trustee's terms, or at a price fixed by him; but equity requires that if the trustee elects to stand upon his right as purchaser, instead of surrendering the property to the beneficiary, he must pay the reasonable value of the land or a fair compensation for the breach of his trust; and this, with greater reason, is true where the trustee has himself subsequently conveyed the land to a *bona fide* purchaser for value and without notice. *Sprinkle v. Wellborn,* 140 N. C., 163; *Froneberger v. Lewis, supra.* When *Froneberger v. Lewis* was before this Court the first time, 70 N. C., 456, the Court said: "It is against the policy of the law to allow an administrator to buy at his own sale; and when he does so, those interested have their election to treat the sale as a nullity—in this case, to have the sale set aside and a new sale ordered—or to let the sale stand and demand a full price," citing *Ryden v. Jones,* 8 N. C., 497; and the trustee was charged accordingly in that case, even though the *cestui que trust* was present at the sale and assented to it.

This suit was heard in the court below upon the theory that the plaintiff had elected to take the value of the land as compensation for the breach of trust by the trustee in buying the land for himself at the sale, and afterwards disposing of it, and it was so submitted to the jury without apparent objection to the issues. The trustee, according to the record, is now insisting that the sale was valid and that he has conveyed to an innocent purchaser, Felix Lee, as he excepted to the court's intimation that he was not such, and also moved to nonsuit the plaintiff. The court expressly states that the plaintiff has elected to take the value of the land. Although Felix Lee was made a party, he filed no answer and no issue was submitted concerning his rights as a *bona fide* purchaser for value and without notice. His Honor told the jury, it is true, that he would submit an issue and to answer it "No," but it was not, in fact, submitted and answered. Besides, as plaintiff takes the value of the land in the place of the land itself, Felix Lee cannot be prejudiced by the judgment, as he has a deed for the land from the defendant, who purchased it at the sale.

We observe that no issue was tendered and no request for instructions made upon the theory that defendants were entitled to have the same set aside and return the land to the plaintiff. Their whole defense proceeds upon quite a contrary basis, namely, that they have a right to hold the land against the plaintiff, having acquired it under a valid sale, and for this reason they moved for a nonsuit, which could not be based upon any other notion.

Another exception taken by defendant was that the proceeds from the sale of the mules were not sufficient to pay the mortgage debt, and therefore it had the right to sell the land and to purchase at the sale. This proved not to be true; but even if it had been, it did not justify the defendant in buying the land at its own sale and afterwards resisting the claim of the plaintiff by denying that he had any right in or to the land, or any equity to have the sale set aside. The case of *Tayloe v. Tayloe,* 108 N. C., 69, where the trustee bought property at his own sale, seems to be directly in point. The court there said that the trustee had dealt with the property unlawfully and sold it for a sum of money greatly less than its value, to appellee's injury, and having failed to dispose of it as the law directed, he was clearly liable for its value.

We do not mean to intimate that a mortgagee may not, sometimes, buy in property at his own sale to prevent a sacrifice of it by a sale to a third party below its value, as such a course may be necessary in order to prevent a loss to himself and the mortgagor. But he must do so in good faith, and in recognition of the mortgagor's right to avoid the sale if he elects so to do. Instead of pursuing this course, defendant company, at the very outset, denied plaintiffs' right to anything, out and out, and prayed for judgment that they take nothing by their action, but be taxed with the costs. They seized and sold the mules unlawfully, and after becoming responsible, by reason of the conversion, for their full value, which was sufficient to pay the debt, they nevertheless sold the land under the power contained in the mortgage, bought it in for themselves, asserted their right to hold it free from any interest or claim of plaintiffs, and conveyed it to a third party, and, as they alleged and maintained in the trial below, for value and without notice, if there was any defect in its title, which was denied. There is nothing in the record by way of prayers for instructions, exceptions to issues, instructions of the court, or assignment of errors, that raises the question properly as to the defendant's nonliability for the value of the land. The issue as to the value of the land was submitted without objection, and it was raised by the pleadings, as plaintiffs, by their amendment to the complaint, asked that the value of the land be determined and that they have judgment for it, and the injury was confined to this phase of the case without any objection. The effect of an amendment of a complaint, as super-

seding the original pleadings, was stated at the last term in *Zagier v. Zagier,* 167 N. C., 616, and in *Warren v. R. R.,* 156 N. C., 591. It is sufficient to say, though, that the case was tried below on the issues as to the value of the property with defendant's full acquiescence, and we hear the case here according to the theory upon which it was tried in the court below. *Allen v. R. R.,* 119 N. C., 710; *Hendon v. R. R.,* 127 N. C., 110; *Graves v. Barrett,* 126 N. C., 267; *S. v. McWhirter,* 141 N. C., 809. The whole theory of the defense below is wholly inconsistent with the present contention that plaintiffs should be required to take the land. It is too late to set up this claim, and it does not meet with the favor of the Court, and especially since defendant has complicated the matter by other conveyances.

It is suggested, though, with much confidence, that plaintiff made a binding and irrevocable election in the original complaint, and, therefore, the amendment, which is inconsistent with and repugnant to it, cannot be considered; but no such objection was taken to the pleading by motion to strike out, demurrer, or in any other regular way, which is necessary to raise such a question; and, too, defendant, by not objecting, consented to the amendment and agreed to the submission of the issue as to the value of the land. In *Scott v. Turley,* 9 Lea (Tenn.), 631, where a conclusive election or ratification was relied on at first, and an amended or supplemental bill afterwards filed, which was repugnant to it, and presented "the anomaly of antagonistic rights being prosecuted in the same suit," the Court held (as the headnote of the case shows) that when the plaintiff "brought the agent before the court, repudiating his act and seeking to hold him individually liable for the debt, while insisting at the same time upon the relief sought in the original bill, and the agent answered to the merits, without objecting to the form of suit or setting up the defense of ratification by reason of the course pursued, the principal will be entitled to relief under the bill repudiating the act of the agent. The amended and supplemental bill filed under such circumstances is, in substance, an original bill upon a different cause of action, and if the defendant, without objection, goes to trial on the merits, must be treated as such." That defendant has waived the benefit of the election by not availing itself of it by proper pleading, is also held in *Davis v. Terry,* 114 N. C., 29; *Hawkins v. Hughes,* 87 N. C., 115. A party cannot take advantage of a defense, which he has ignored or foregone during the entire course of the trial, including the judgment. It is too late, after an adverse verdict and judgment, to take a position which is foreclosed by them, because not presented at an earlier stage of the case in the orderly course of pleading. The authorities clearly show that the objection may be waived by answering to the merits or taking issue thereon.

If there is one rule settled by the courts, it is that a party will not be permitted to have two chances, one on a favorable verdict and another on some supposed defect or irregularity, or even a defense, preceding it. Defendant could not take a chance on a low assessment of value, and, when disappointed by the verdict, fall back upon an inconsistent position. It was also required to elect, and must abide by its choice, freely and intelligently made. Besides, the doctrine of election does not apply. It is only enforced when the facts are ascertained and known; but here, by its answer, defendant raised an issue as to the validity of the sale, asserting strenuously that it acquired an unassailable title, and that it had conveyed a valid title to the land by its deed to a purchaser for value and without notice. How could the plaintiff be made to elect, unless he was required to take the risk of an adverse verdict as to the latter defense? If he had chosen to take the land, and his choice was irrevocable, the jury might have found that Felix Lee was a purchaser for value and without notice, which would have deprived plaintiff of the land. The law will not subject him to this quandary and eventual loss by the happening of some event which could not be foreseen. The rule must operate fairly and equitably or not at all. The very authority relied on to fasten the election upon plaintiff so says: "If, in attempting and designing to make an election, one puts forth an act or commences an action in ignorance of substantial facts which proffer an alternate remedy, and the knowledge of which is essential to an intelligent choice of procedure, his act or action is not binding. He may, when informed, adopt a different remedy." Enc. of Pl. and Pr., p. 366. The plaintiff made his election as to the value when he discovered the true situation, and the defense, from the answer. It may also be said that the authorities are about evenly divided in number as to whether the mere bringing of a suit is to be considered as a conclusive election, the weight of reason being against it, when no one is prejudiced by the change in the form of relief afterwards prayed, the doctrine of election being founded on the idea of an estoppel. In *Trimble v. Bank,* 71 Mo. App., 467, it was held that "an election is in the nature of an estoppel, and unless it is shown by the record of a final judgment or contains the elements of an estoppel *in pais,* owing to intervening rights, it will not conclude the party against whom it is invoked," citing *Johnson v. R. R.,* 120 Mo., 344, and other cases, among them *Wiggins Ferry Co. v. R. R.,* 142 U. S., 396; *Balton Mines Co. v. Stokes,* 82 Ind., 50. See, also, *H. B. L. R. Co. v. Corpening,* 97 Ala., 681; *McCoy v. Stockman,* 146 Ind., 668; *J. B. Com. Co. v. K. C. Cont. Bank,* 116 Mo., 558; *Spurr v. C. U. Assur. Co.,* 40 Minn., 428; *Spurr v. Home Ins. Co., ibid.,* 424; *Norcross v. Cambridge,* 166 Mass., 508; *Moore v. Sanford,* 151 Mass., 285; *R. U. P. R. Co. v. N. Y., etc., R. Co.,* 95 Va., 386; *N. Y. Bank v. Tyndale,* 179

Mass., 390; *Hagadine, etc., Co. v. Warden,* 150 Mo., 578; *Matter of Mc-Laughlin,* 76 N. Y. App. Div., 75. In *Kehoe v. Patton,* 21 R. I., 223, the Court said: "We do not think, however, that the mere bringing of the suit in equity, it not having proceeded to final decree, amounts to an election (*Jenks v. Smith,* 14 R. I., 634; *Quidnick Co. v. Chafee,* 13 R. I., 367, 369), and therefore we are of opinion that the plea is not sufficient. The defendant's remedy is by motion to require the plaintiff to elect whether he will proceed in the suit in equity or by the present action." Referring to an amendment inconsistent with the original bill, the Court, in *McDougald v. Williford,* 14 Ga., 665, said: "In courts of justice, equity, and common law, the time will come, and now is, when mispleading will never be allowed to prejudice any party, but every case will be ultimately tried upon its real and substantial merits." The Court added that it does not follow, because the original and amended bills are contradictory, that the amendment will be rejected, but amendments will be liberally allowed to change the nature of the bill and rectify mistakes. Our present Code system was adopted for the very purpose here indicated, and is liberal in its allowance of amendments. Rev., secs. 507, 508, and 509. It is said to modify the doctrine of election of remedies (7 Enc. of Pl. and Pr., p. 368), and to require the trial of cases to proceed according to right and justice, rejecting antiquated and refined technicalities. In a case similar to the one at bar, this Court held that the proper course was to amend and substitute the last allegation for the first, the two remedies sought being inconsistent. *Milton v. Hogue,* 39 N. C., 416.

The question asked the witness, as to the controversy about the title, was not answered, and counsel did not indicate what they expected to prove or that the answer would probably be favorable to them. It, therefore, comes within the rule so often announced by this and other courts, that unless we can know certainly what is the nature of the evidence proposed to be elicited, we cannot decide as to its competency, and especially as to its relevancy. *S. v. Leak,* 156 N. C., 643; *S. v. Lane,* 166 N. C., 333, and cases cited at p. 377; *In re Smith's Will,* 163 N. C., 464; *Dickerson v. Dail,* 159 N. C., 541; *Lumber Co. v. Childerhose,* 167 N. C., 34; *A. L. W. Co. v. C. B. and T. Corporation,* 138 Ga., 618; *Wadley v. Southern Railway,* 137 Ga., 497; *Manning v. Webb,* 72 S. E., 401; *Cutchin v. City of Roanoke,* 74 S. E. (Va.), 403. In *Leak's case, supra, Justice Allen* says: "The exception to the refusal to permit the witness to say whether or not the defendant was considered bright or had the reputation of not having a strong mind, are without merit. There is nothing to indicate what was expected to be proved, or what answer would have been given to the question, and so far as we can see, the witness would have answered both questions in the negative." As far as we can see from the

record, if there was any error, it was harmless. The witness, if permitted to answer the question, might have stated that there was no such controversy, or that he knew nothing about it, and it is very probable that he would have so answered.

The other exceptions are without any merit.

No error.

BROWN, J., dissenting: I agree with the majority of the Court that the defendants are liable to the plaintiff for the value of the mules, as the power of sale contained in the mortgage is confined in express terms to the land, and does not extend to the mules. Therefore, having seized and sold the mules without any power of sale, the defendants are undoubtedly liable to the plaintiff for their actual value. ·

But I do not think the defendants are liable for the actual value of the land. Under the well settled principles of law, the plaintiff must elect as to whether he will set aside the sale and claim the land, itself, and its rents and profits, or whether he will affirm the sale of the land and demand its actual value.

The original complaint plainly elects to recover the land, itself, with its rents and profits, and demands judgment that the sale be declared null and void and that the deed executed by the. defendant Horse Exchange, under the power of sale, be set aside.

It is true that, after the defendants had joined issue by filing an answer to that complaint, the plaintiff at October Term, 1914, the term when the case was tried, filed, by leave of court, an amended complaint in which they seek to affirm the sale of the land and to recover its value.

While the court may allow amendments to pleadings, the amendment cannot be permitted to have the affect of reversing and revoking the election already made in December, 1913, when the original complaint was filed.

It is well settled that an election, once made, with knowledge of the facts, between coexisting remedial rights, which are inconsistent, is irrevocable and conclusive, irrespective of intent, and constitutes an absolute bar to any action, suit, or proceeding, upon a remedial right, inconsistent with that asserted by the election. 15 Cyc., 262, citing an array of cases.

Speaking of the finality of an election, it is said in the Encyclopedia of Pleading and Practice, vol. 7, p. 364: "It may, therefore, be stated as approximately if not substantially true, that, subject to the exceptions hereafter stated, the first pronounced act of election is final and imperative. It is certainly the established law in every State that has spoken on the subject, that the definite adoption· of one of two or more incon-

168—30

sistent remedies, by a party cognizant of the material facts, is a conclusive and irrevocable bar to his resort to the alternative remedy."

The exceptions to the rule are want of jurisdiction, premature action, mistaken remedy, ignorance of material facts, none of which apply to the facts in this case. When the plaintiff filed his original complaint, he had full knowledge of the facts therein stated, and more particularly of the value of the land, as he was its owner and had been for some time.

It does not appear in this record that the defendant consented to the amendment by which the plaintiff was permitted to revoke his election. For these reasons, I am of opinion that the Court should set aside the sale and order a resale, instead of giving judgment against the defendant for the value of the land.