## B. M. WHITEHURST v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 4 March, 1908).

1. Evidence — Depositions — Agreement of Parties — Deponent in Same Town—Harmless Error.

When by agreement depositions were read upon the trial of an action, and it was testified that the deponent was at the time sick at home, for the purpose of showing she could not be present, the error, if any, was harmless.

2. Evidence—Negligence—Sparks from Engine—Whole Evidence— Harmless Error.

In an action for damages for the burning of plaintiff's house, etc., by reason of hot cinders negligently emitted from the smokestack of the defendant's locomotives, it was not error in the court below, in identifying a certain engine which had passed immediately preceding the time of the fire, to permit plaintiff to testify that "the whistle he knew as Captain Taylor's" was the one on the engine, when, under the whole evidence, the locomotive in question was clearly identified, and the jury could not have been misled.

3. Evidence, Corroborative—Testimony of Declarations of Third Persons.

Testimony of one who was on the premises of the plaintiff with another person, immediately preceding the burning of his house, etc., thereon, that the other person "said something like hot pebbles had fallen on his hands and burnt him," in the presence of the plaintiff, is corroborative evidence when such other person has testified to the fact.

4. Evidence—Defective Spark Arrester—Other Fires—Same Train— Time.

When the damages are claimed to have been caused by the burning of plaintiff's house by reason of a defective smokestack, or spark arrester, on defendant's engine, it is competent to prove that the same train had set fire to property adjoining that of plaintiff, or near thereto, near or about the time in question.

5. Evidence—Defective Spark Arrester—Corroborative Evidence— Other Fires—Time.

When it appears from the entire evidence that a witness was permitted to testify as to fires caused by the same engine on the day of the week immediately preceding the injury complained of, it is competent evidence, and within the rule. (*Cheek v. Lumber Co.*, 134 N. C., 225, cited and approved).

6. **Same.**

   Taken in connection with other evidence, it was competent, to identify the train, for a witness to testify that he saw smoke in his own woods, immediately after seeing that arising from plaintiff's premises.

7. **Evidence, Expert—Contradiction—Actual Observations.**

   It was competent, to contradict the evidence of defendant's expert witness as to the distance hot cinders could have been thrown from its engine, to show by witnesses how far they had been thus thrown, according to their own knowledge and observation.

8. **Evidence—Defective Spark Arresters—Nonsuit—Evidence Sufficient.**

   In an action for damages arising from the imperfect construction of the smokestack of defendant's engine, from which hot cinders were thrown upon plaintiff's property, causing it to take fire, a motion as of nonsuit, upon the evidence, will not be sustained, when there is evidence tending to show that the sparks or cinders from one of defendant's engines caused the fire, and defendant's expert witnesses testified that, if this was the case, the engine was not properly equipped or the spark arrester was not in good condition.

CIVIL ACTION, tried before *Lyon, J.,* and a jury, at August Term, 1907, of the Superior Court of PITT County.

The facts sufficiently appear in the opinion of the Court.

*J. L. Fleming* and *L. I. Moore* for plaintiff.
*Skinner & Whedbee* for defendant.

WALKER, J.   This action was brought to recover damages for burning plaintiff's residence, stables, barn and other property, which he alleged was caused by the negligence of the defendant, in allowing hot cinders to be emitted from the smokestack of its engine.   There was a verdict for the plaintiff, and from the judgment thereon the defendant appealed.

Numerous exceptions were taken by the defendant to the rulings and charge of the court, and we will consider them in the order in which they are stated in the assignment of errors.

1. The parties had agreed that the deposition of the plaintiff's wife might be read as evidence by the plaintiff, and the

court subsequently permitted the plaintiff to prove that his wife. was sick at his home, for the sole purpose of showing that she was unable to be present at the trial and testify in person. This evidence was objected to by the defendant, but we do not see why the error, if any, was not harmless. It certainly should not have prejudiced the defendant, and we must assume that it did not. We do not mean to imply that there was any error.

2. The plaintiff testified that "the whistle he knew as Captain Taylor's" was the one which was on the engine that passed his premises the day his property was burned. The defendant objected to the evidence upon the ground that it was too indefinite, "as it did not necessarily relate to the train which was alleged to have passed just before the fire." When we consider the whole of plaintiff's own testimony, and especially when we take into consideration also the other testimony in the cause, the engine to which the plaintiff referred as the one from which the live cinders had been emitted which caused the conflagration was clearly identified, and the jury could not have been misled as to the engine which caused the fire, and to which the plaintiff had referred in his testimony.

3. It was competent and relevant to prove by the witness Stanley Hopkins that he and Blount Whichard were working at a bench on the plaintiff's premises on the day of the fire, and that Whichard had said that something like hot pebbles had fallen on his hands and burnt him, as Whichard had already himself given testimony of the same nature; and it can make no difference that, at the time Hopkins heard Whichard make the statement, the latter was talking to the plaintiff. It was corroborative of Whichard's testimony. It was also competent to prove that the same train had set fire to the woods adjoining the premises of the plaintiff, or near thereto. It was a fact tending to show the defective condition of the engine, either that it had no spark arrester or an insufficient one. *Johnson v. Railroad,* 140 N. C., 581; *Knott v.*

*Railroad,* 142 N. C., 238; *Aycock v. Railroad,* 89 N. C., 321. The testimony of the witness Cleve Moore, to which exceptions five, six and seven were taken, was properly admitted, for the same reason as that just given. It is clear, when his entire statement is considered in connection with the defendant's preliminary examination to test the competency of his testimony, that the witness, when speaking of having seen the same engine emitting sparks on a previous day, was referring to a day of the week immediately preceding the time of the fire. The testimony is not, therefore, within the rule laid down in *Cheek v. Lumber Co.,* 134 N. C., 225, excluding such evidence when relating to the emission of sparks by the same engine a year after the fire which had destroyed the plaintiff's property.

The evidence of the witness Briley, to the effect that immediately after the southbound train passed he saw smoke in his own woods, was sufficiently definite to identify the train, from the locomotive of which the sparks had been emitted which caused the fire in his woods, as he stated that he saw the smoke rising from the plaintiff's premises just before he saw the smoke in his woods. In passing upon the competency of this testimony, we cannot detach it from the other evidence in the case, but must consider it with reference to the testimony as already given by this witness, and also by the other witnesses.

The testimony of B. B. Briley and the other witnesses, relating to other fires caused by the passing engines of the defendant, was admitted for the purpose of showing at what distance from the right of way sparks or cinders emitted from the engines had fallen, and it was competent for this purpose, in order to contradict the testimony of experts introduced by the defendant to show that it was impossible for cinders from the smokestack of the engine to have fallen so far from the track as to have caused the fire on plaintiff's premises.

This brings us to the defendant's motion to nonsuit the plaintiff, which was overruled by the court. It is contended

by the defendant that there was no evidence that the engine was not properly equipped with a spark arrester, and none that the fire was actually started by a spark emitted from the engine.   We have examined the evidence carefully and find that there was plenary proof as to both facts.   There certainly was evidence that sparks or cinders emitted from one of the defendant's engines caused the fire, and the expert witnesses of the defendant testified that, if this was the case, the engine was not properly equipped, or, to use the language of one of them, "the spark arrester was not in good condition."   The motion to nonsuit was, therefore, properly overruled.   *Craft v. Timber Co.,* 132 N. C., 151; *Williams v. Railroad,* 140 N. C., 623; *Lumber Co. v. Railroad,* 143 N. C., 324; *McMillan v. Railroad,* 126 N. C., 726; *Aycock v. Railroad, supra.*

Under the charge of the court, which was clear and concise, the case was fairly submitted to the jury, and the defendant has no reason, in law, to complain of the result.

No Error.