M. D. ARMFIELD, RECEIVER, v. RALEIGH AND SOUTHPORT
RAILWAY COMPANY.

(Filed 16 April, 1913.)

1. Railroads — Negligence — Fire  Damages — Evidence—Nonsuit—
   Questions for Jury.

   In an action to recover damages from a railroad for negli-
   gently setting fire to the plaintiff's sawmill, there was evidence
   tending to show, and *per contra*, that the passing locomotive at
   that point put on its exhaust, throwing out a great deal of smoke
   and cinders, which the wind carried to and enveloped the mill sit-
   uated near; that from three to five minutes thereafter the ignition
   appeared on the side of the roof sloping nearest to the track;
   that no fire was there before the train passed, or within the
   building which could have caused the fire; and it is *Held*, that
   the evidence, construed as required in such motions, was suffi-
   cient upon the defendant's negligence, and a motion to nonsuit
   should not be sustained; and further *Held*, it was competent for
   a witness to testify that on this same trip at a trestle below
   the mill the same locomotive had set fire to the grass along its
   route.

2. Appeal and Error — Witnesses — Impeachment — Contradictory
   Statements—Record—Presumptions.

   Where the testimony of a witness is sought to be impeached
   by his contradictory conversations held with others on the sub-
   ject-matter of his evidence, it must appear of record on appeal,
   either by proof or proper suggestions, the substance or tenor of
   the conversations excluded, so the Supreme Court may see their
   pertinence or materiality; for otherwise the correctness of the
   ruling of the trial judge will be presumed.

APPEAL by defendant from *Bragaw, J.,* at October Term,
1912, of CUMBERLAND.

Civil action to recover damages for negligently setting fire
to and burning the sawmill, kiln, etc., of plaintiff's company.
There was testimony, on part of plaintiff, tending to show that,
on or about 7 July, 1911, the sawmill of plaintiff's company,
situate on or near the right of way of defendant, was destroyed
by fire and that same was caused by the negligence of defend-
ant in operating one of its trains, defective engine, etc. De-
fendant contended and offered evidence to show that the mill

was burned by reason of fire starting within the mill, and that the defendant company's train had nothing to do with causing the destruction of the property. There was verdict for plaintiff, and defendant excepted and appealed.

*H. L. Cook, Rose & Rose, C. W. Broadfoot, Shaw & McLean, and Sinclair & Dye for plaintiff.*

*Newton, Herring & Oates, Robinson & Lyon, and V. C. Bullard for defendant.*

HOKE, J. Although there is a voluminous record in this case and the amount involved is a large one, the matter at issue is largely dependent on questions of fact. The jury having accepted the plaintiff's version of the occurrence, a cause of action is clearly established, and, after most careful consideration, we find nothing in the exceptions presented which would justify the Court in disturbing the results of the trial. It was chiefly urged for error that, upon the entire testimony, there was no sufficient evidence that defendant's train had anything to do with causing the fire, but, on the record, this position cannot at all be sustained. Among other testimony, J. C. Ballard, for plaintiff, testified in part as follows: "At the time of this fire I was at Lane, N. C. At that time I was superintendent of the mill of the Racoarda Lumber Company, the mill that was burned. Lane is 13 miles from Fayetteville, and is situated on the R. and S. Railroad in Cumberland County. Was present the day the mill was burned. I first discovered the fire on top of the mill shed on the side next the railroad. That was at 3:25 in the afternoon. When I first discovered it, the fire was just about the size of the top of my hat. It was on to the top of the shed. I was standing on the platform of the depot on the end towards Raleigh from here. I was on the opposite side of the railroad from the mill. Mill was on one side and depot on the other side of the railroad. Train No. 8 of the defendant had just passed. It was a passenger train, and was coming to Fayetteville. I was there when that train passed, and I was standing right on the platform looking at it. This was the same platform I was on when I saw the fire. The wind was blowing very hard. The train referred to did not stop;

it sort of slowed up. It ran faster after it got down by the planer shed. It increased its speed right against the dry-kiln and it commenced to throw out a heavy exhaust and sparks after he pulled his throttle open—that is, he increased his speed by throwing his throttle open, and that threw out heavy smoke and cinders. As it came out of the smokestack, the smoke was heavy; it blew sort of over the mill. It made a heavy black smoke, and I could scarcely see the mill. Just as soon as the train passed and the smoke sort of cleared—it was not more than three to five minutes after it passed—there was fire on there about the size of this hat, and it flamed up like that. (Witness snapped his fingers to indicate flaming up of fire.) I think the railroad there, as near as I can tell, runs nearly north and south; I am not exactly certain. The railroad runs about north, and the wind was blowing from over the warehouse east of the railroad, and the mill was on the west side of the railroad, and the wind was driving the smoke square from the warehouse to the depot, right straight over the mill. From where the depot sits to where the mill site is, is directly across, and near it; but to where the shed sits is a little farther on, and it was in the path of the smoke from the train. The wind was blowing somewhere from 5 to 8 miles an hour that day, nearly all day. We had a heavy wind pretty much all that day. The weather was dry and hot. When I saw the fire, I spoke to the two men there with me. I told them to get some buckets. I jumped off the platform and ran as hard as I could run across the railroad, right under the mill shed, and the fire was right on top of the mill shed." There was other testimony from this witness tending to show that the fire was caused by defendant's train and negligence in the condition and operation of the engine, and, further, that the fire did not originate in the mill. J. E. Parker, another witness for plaintiff, testified in part as follows: "I saw a train pass the mill just before the fire happened. It was a mail. I think I spoke to Mr. Bullard about it. It was about 3 :24 o'clock P. M. The train was going south on the R. and S. road. I was on the depot with Mr. Bullard and Mr. Vinson. I didn't exactly see the fire when it started. When I first saw it, it looked to me between

a peck and a half-bushel measure. It was between me and the comb of the building on the side next to me. I was on the southeast side from the building. I thought the wind was blowing from the southeast right across the mill. The fire was something like 4 or 5 feet from the comb of the house on the side towards the railroad. It was something like three to five minutes, to the best of my knowledge, after the train passed, when I saw the fire. Mr. Bullard, Mr. Vinson, and I were on the depot. Mr. Vinson was lying down, and I was sitting up, and Mr. Bullard was standing up between us both during the time the train passed. There was no fire on that roof before the train passed. The engine, before passing the mill, slowed up. It then went by, exhausting. I saw it exhaust. Certainly, the wind was making the exhaust go over the mill side. Mr. Bullard was the first to detect the fire, and called my attention to it. I saw some exhaust going out, steam and smoke. When the fire was called to my attention, I suggested the plan to get the hands, and Mr. Bullard did not hear me, and went running to the mill, and I ran behind him part of the way, and thought of the planing mill and made for that. We got to the lumber and cut it in two and throwed it about and tried to break it away. If you understand as I told you about the wind blowing, the fire burned so fast, it got so hot, it ran us away and we could not work." Yet another witness, Adolphus Arunda, testified in chief as follows: "At the time fire started on the mill I had come out of the woods and come to mill, and train passed me—mail train. After mail train passed me, it opened for power, and I saw big fire on roof. Mill was about 40 yards from me. Came out of woods and went to mill to get a drink of water. Mail train passed about 3:30, just as I came up to mill, and in about three minutes after train passed I saw a big fire on top of mill shed. Was about 40 yards from fire when I first saw it. Train was throwing out sparks and smoke and cinders."

Witness was asked by attorney for plaintiff, in substance, the following questions: Did you see any other fire that day, and if so, where? Defendant objected; objection overruled; exception. Exception No. 16.

A. Same engine also set fire to grass at trestle below the mill on same trip. Saw no fire under shed when went under there. I helped save lumber and pull belts off of engines, or, rather, put some lumber out in effort to save it. Fire when first seen by me was on railroad side and as big as a hat.

There was much evidence on part of defendant in contradiction of this view, but, applying the accepted principle, that on motion to nonsuit the evidence making for plaintiff's right to recover must be taken as true and interpreted in the light most favorable to him, the evidence set out makes it clear that the motion for nonsuit could not have been allowed. Numerous decisions with us are to the effect that the evidence referred to is sufficient to carry the case to the jury (*Aman v. Lumber Co.,* 161 N. C., 373; *Currie v. R. R.,* 156 N. C., 419; *Kornegay v. R. R.,* 154 N. C., 389; *Deppe v. R. R.,* 152 N. C., 79; *White-hurst v. R. R.,* 146 N. C., 588; *Williams v. R. R.,* 140 N. C., 623), and also recognize the competency of the statement made by the witness Arunda, that he had seen the same engine, on the same trip, set fire to grass at the trestle below the mill. *Whitehurst v. R. R., supra,* 4th headnote. In this connection we consider it well to note that the decision in *Currie v. R. R., supra,* disapproving a position maintained in *Williams v. R. R.,* the reference is to the *Williams* case appearing in 130 N. C., p. 116, and not to the *Williams* case in 140 N. C., 623, cited and relied upon in the present opinion. It was further urged for defendant that the trial court made an erroneous ruling in refusing to permit a witness for defendant, Vinie Corbin, to testify to a conversation she had with one A. M. Ray on the afternoon of the fire. While there is authority to the contrary elsewhere, it is the accepted position in this State that "Whenever the credit of a witness is impeached, whether by proof of general bad character or by contradictory statements by himself, or by cross-examination tending to impeach his veracity or memory, or at times by his very position in reference to the cause and its parties, it may be restored or strengthened by any proper evidence tending to restore confidence in his veracity and in the truthfulness of his testimony, whether such evidence appears in a verbal or written state-

SMITH *v.* R. R.

ment, verified or not, or whether the previous statements were made *ante litem motam* or pending the controversy." *S. v. Exum,* 138 N. C., 599, citing *Jones v. Jones,* 80 N. C., 246, and other cases. But the objection cannot be held for reversible error, because it nowhere appears by suggestion or otherwise what was the substance or tenor of the conversation or that it would have tended in anywise to corroborate the witness. It is the principle and policy of the law that these trials at *nisi prius* should be upheld unless it is clearly made to appear that some substantial error has been committed to appellate's prejudice, and it is not permissible on an exception of this kind to annul the proceedings and entail upon the parties and the public the cost and labor of another protracted trial when it nowhere appears in the record by statement or suggestion that the conversation referred to would have corroborated the witness or in any way affected the result. *Fulwood v. Fulwood,* 161 N. C., 601; *Daniel v. Dixon,* 161 N. C., 377.

Attention, is also called to the fact that though A. M. Ray, the person spoken to, was subsequently put on the stand, there was no effort made to have this witness testify to the alleged conversation. As heretofore stated, a careful examination of the record fails to disclose reversible error, and the judgment in plaintiff's favor must be affirmed.

No error.