ROLAND SLAYSMAN *v.* PETER J. GERST.

[No. 42, April Term, 1930.]

*Decided June 11th, 1930.*

The cause was argued before BOND, C. J., ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Lyde Mason, Jr.*, with whom was *Philip V. Hendelberg*, on the brief, for the appellant.

*George E. Kieffner*, with whom were *Stewart & Pearre* and *Jenifer & Jenifer*, on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The accident in this case occurred on Kirk Avenue in Baltimore City, between Bonaparte and Bartlett Streets. Kirk Avenue runs north and south. The plaintiff below (appellant here) on March 16th, 1929, was injured by being struck by the automobile of the defendant (appellee) traveling south on Kirk Avenue. It was a clear day; the bed of the street being dry, surfaced with asphalt, and twenty-six feet wide. The accident occurred on Saturday afternoon about four o'clock. The appellant is a boy who was twelve years and eleven months of age at the time he received the injuries for which damages are sought. At the close of the plaintiff's testimony the defendant offered three prayers asking a directed verdict in his favor, which were refused. The trial proceeded by the introduction of evidence on behalf of the defendant; and at the close of the whole case the defendant offered the following prayer, which was granted: "The court instructs the jury that under the pleadings in this case there is no evidence legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendant." Under

this instruction the jury found a verdict for the defendant, upon which judgment was entered for the defendant for costs. The appeal which we are considering is from that judgment.

The evidence of the plaintiff and defendant presents entirely different theories as to how the accident occurred.

The plaintiff's testimony is that he and another boy were playing with a ball on the west side of Kirk Avenue, a short distance north of an alley, which alley is ninety feet north of Bartlett Street. The boys were throwing a rubber ball against the brick wall of a building on the west side of Kirk Avenue at this point. They were on the sidewalk when the ball rebounded from the wall into the bed of the street and rolled across to the east side; whereupon the plaintiff left the west curb, looked to the north, ran across the street and recovered the ball about one foot from the east curb, then, without looking further, returned towards the west side of the street and was struck by an automobile, belonging to the defendant and which he was driving, about the center of the street. He says that he did not see the defendant's automobile until he was struck on his right side by the right fender of the automobile; that the street was level, and there was a parked automobile on the west side of Kirk Avenue near the point of the collision; that he heard no sounds, neither did he see the automobile before he was hit; that he fell over on the curb on the west side. On cross-examination he testified that when he was struck he was to the west of the center of Kirk Avenue; that when he crossed the street to get the ball, he left the west sidewalk in front of the parked machine; that he looked up Kirk Avenue when he was about three feet from the curb, but did not look after he picked up the ball on the east side and was returning; that if he had looked after picking up the ball, there was nothing to prevent him from seeing. Mrs. Sheehan's house is on the northwest corner of Kirk Avenue and Bartlett Street, and extends north from Bartlett Street to the alley. Edward G. Olert testified that he lived on Bartlett Street, the fifth house from Kirk Avenue; that at the time of the accident he was going down the alley in back of his house leading to Kirk Avenue, and was

at Mrs. Sheehan's back yard; that he saw the plaintiff run across the street with the ball, and saw the machine strike him while he was returning from east to west; that witness did not hear any warning of the approach of the defendant's automobile; that the plaintiff was lying about five feet from the west curb when he first saw him; that he did not hear any brakes applied, and that the defendant's car proceeded between eight and ten feet after striking the plaintiff. This witness also said there was one machine parked on the west side of the street; that, at the time he was struck, the plaintiff was between the defendant's car and the west curb; that the defendant pulled his car to the side before he got out, at which time the defendant's car was "around eight feet" from where he hit the boy.

Mrs. Lula Olert testified that she was the wife of the preceding witness and an aunt of the plaintiff; that she did not see the accident, but went to the scene almost immediately and saw the defendant "setting Roland down in the alley with his eye and mouth bleeding, his shoe off and limping"; that while she was standing at the scene of the accident Mr. and Mrs. Hoffeld of Stemmers Run came over and tapped her on the shoulder and gave her their names and addresses as witnesses; that the defendant made no statement or explanation of how the accident happened, but did say the boy did not want to go to the hospital. Mrs. Frances Sheehan testified that at the time of the accident she was sitting at her kitchen window looking at the boys playing ball; that she saw the defendant's machine coming south on Kirk Avenue when it was about five hundred feet from the point where the accident occurred; that she does not drive an automobile herself, but has been riding in one for ten years. This witness was then asked: "Q. Do I understand that you saw this automobile from the time you first saw it until it hit the boy? A. Absolutely. Q. Did you see the boy hit? A. I certainly did. Q. Between the time that you first saw the machine and the time when the boy was struck, I would like you to tell the jury whether the machine was going slow or fast or very slow or very fast?" This question was objected to, and

objection sustained. The witness then testified that she saw the defendant's machine continuously from a point five hundred feet from the accident until the plaintiff was struck, and "it was going at a very excessive rate of speed; very fast"; that witness went to the scene of the accident and found the plaintiff lying about five feet from the west curb; that she saw the plaintiff before the accident, standing on the pavement on the west side of Kirk Avenue "playing with the ball up against the wall"; that "the ball bounced in the street and as it struck in the street it run to the east side and Roland after it and I saw Roland after it and he was a little more than half way over Kirk Avenue on the west side when the gentleman in the machine came down and struck the child in the side with the front fender and struck him on the side and rolled him over on the curb stone"; that she did not hear any warning sound of the approach of the automobile. "Q. I want to ask you where was the machine of Mr. Gerst when he pulled it up to the curb, if he did that? A. His machine was across the center of the road and after he struck the child he had to skid, I guess he skid it around ten or twelve feet into the 14-feet alley. Q. You mean he turned into the alley? A. He didn't turn in the alley, he had to come to the west side of the road to stop. Q. Where was he with reference to the alley when he finally stopped his machine? A. How far from the alley? Q. Yes, where was he? A. I judge a foot and a half or two feet from the alley. Q. North or south of the alley? A. North. Q. I want to ask you this, how many stops did his machine (make) before he got out? A. When he skid, he only had one stop to make. Q. He did'nt stop it when he hit the boy and then pull to the curb? A. Impossible, he could not, he was going too fast. Q. After he struck the boy he went to his first stopping place and then got out? A. Absolutely. Q. Did you notice any other cars parked around there at the time of the accident? A. Yes, one. Q. where was that one? A. That was parked on the west side of Kirk Avenue, belonging to the Chesapeake Construction Company or one of the foremen or bosses. Q. Can you tell whether Gerst's machine had passed that one when he struck

Roland? A. Yes, I won't say the rear of his machine cleared it but the front cleared it. Q. So he was a little bit ahead of the parked machine? A. Yes." This witness did not see Hoffeld at the time of the accident. She further testified that the defendant's machine went from twelve to fifteen feet aftr hitting the plaintiff.

The defendant was driving a Dodge sedan; the other occupant of the car, George Kahl, was on the front seat, to the right of the driver. Jacob Hoffeld testified that he was within fifty feet of the accident when it occurred, was driving north on Kirk Avenue, had passed Bartlett Street, going in the direction of Bonaparte Street, saw the defendant's machine coming south on the opposite side of the street, saw the plaintiff miss the ball that had bounded from the wall on the west side of Kirk Avenue into the bed of the street, whereupon the plaintiff moved backward into the bed of the street, directly in front of the defendant's machine; that the defendant stopped his machine; that when he saw the plaintiff "duck" into the street after the ball, defendant's machine was from seven to ten feet away and to the north; that the point of contact was about seven feet from the west curb of Kirk Avenue; "the boy was backing back to catch the ball, and he missed the ball and went down like this to catch the ball and the machine hit him and threw him over"; "Q. How far did the machine go after it struck the boy? A. About five feet. Q. Did the machine go over the boy? A. No, sir"; that the plaintiff was within his vision from the time he started from the west curb where he was playing on into the street until the accident happened; that he had a clear vision of the boy from fifty to a hundred feet away; that the plaintiff never crossed from the west to the east curb, and never got close to the east curb; that he thinks there were about two machines, "I know two machines, I don't know whether any more," parked up against the curb on the west side of Kirk Avenue, north of the point of contact. Mr. Hoffeld's companion, Mrs. Huston, the defendant and the occupant of his car, all testified that the description given by Hoffeld was how the accident occurred; that the defendant was driving at a

moderate rate of speed south on the west side of Kirk Avenue, on which side there were two or three parked machines; that when he got about opposite the parked machine farthest south, the plaintiff backed off of the pavement in an effort to catch the ball, directly in the path of the defendant's machine; that his right front fender struck the plaintiff and knocked him forward and to the right, close to the west curb; the defendant stopped his car in a distance of from four to six feet and then pulled up to the curb eight or ten feet distant, got out and rendered assistance to the plaintiff; that it was suggested that he go to the hospital, and the plaintiff protested, when shortly the plaintiff's father arrived and the defendant took the plaintiff and his father in his machine and carried them to the hospital.

From this résumé of the testimony it will be seen that the plaintiff's theory of the accident is that he was struck while returning from the east to the west side of Kirk Avenue, while all of the defendant's witnesses insist that he never crossed from the west to the east side, but was struck a few feet from the west side, at the time he was backing off of the pavement in an endeavor to catch the ball. By granting the defendant's prayer at the close of the whole case, the court instructed the jury that there was no evidence legally sufficient to entitle the plaintiff to recover. This prayer was a demurrer to the evidence, and, in considering the court's action upon it, on appeal, we are bound to take the testimony, and all legitimate inferences therefrom, in the most favorable light from the plaintiff's standpoint. When applying this test, we find that the single bit of testimony upon which negligence of the defendant could be predicated is that of the witness Mrs. Sheehan, who said the defendant was driving at an "excessive rate of speed," "very fast," from the time she first saw him five hundred feet north of the point of contact until the plaintiff was struck. This witness was seated in the kitchen of her home, a distance of five hundred feet, when she first saw the defendant's automobile, and from fifty to one hundred feet from the point of the accident. She does not operate an automobile, and does not attempt to give the rate of

speed per hour; and it is impossible from her testimony to say what the speed of the defendant's automobile was, other than that in her opinion it was an excessive rate of speed. Neither is there any evidence as to what she considered "very fast" or "excessive rate of speed." There is no testimony as to the grinding of brakes, or that they were suddenly applied by the defendant; yet the uncontradicted evidence is that the defendant's machine stopped within a very few feet after striking the plaintiff, the plaintiff's witnesses placing the distance at from eight to ten feet, while the defendant's say it was from four to five feet; and that after the plaintiff was struck and knocked forward, the defendant's car was stopped before it reached the point at which the plaintiff lay.

The question, therefore, is: Was the trial court in error in withdrawing the case from the jury under such circumstances? There is no presumption against a motorist from the mere fact that his car strikes a child, and it must be proved that the driver was negligent. *Brune's Automobile Law of Md.*, sec. 29; *Berry on Automobiles,* secs. 483-485; *Mullikin v. Baltimore,* 131 Md. 363. In other words, the mere happening of an accident resulting in injury to the plaintiff does not, standing alone, entitle him to damages; but, added to the injury there must be proved some act of negligence on the part of the defendant, shown to be the proximate cause of the injury. *Havermale v. Houck,* 122 Md. 82; *Benedick v. Potts,* 88 Md. 53; *United Rwys. v. Durham,* 117 Md. 192; *Young Co. v. Slate, use of Kabat,* 117 Md. 247; *Coughlin v. Blaul,* 120 Md. 36. In *Schier v. Wehner,* 116 Md. 554: "It has been frequently said in this State, that the bare fact that an injury has happened, of itself and apart from all surrounding circumstances, cannot authorize an inference that it was caused by negligence. To assume that, is to assume the very fact required to be proven; *Joyce v. Flanigan,* 111 Md. 499; or as was said in the case of *B. & O. R. R. v. Black,* 107 Md. 666: 'All that is certain is that the plaintiff was injured in some way, and the plaintiff asks that the jury be allowed and in the absence of all explanatory evidence to infer that some act of a negligent character

for which the defendant is responsible caused the injury sustained. No case has gone to that extent, and no known principle can be cited to sustain such a position.'" In other words, the essential requisite for the recovery is some act of negligence on the part of the defendant, either of commission or omission, to which the accident may be directly attributed; and it is necessary that there be some evidence indicative of negligence in the circumstances surrounding an occurrence, either antecedent to or coincident with the happening of the accident occasioning the injury complained of. It is true, as stated, that Mrs. Sheehan testified that the machine of the defendant, which was shown to be a Dodge sedan, was moving at an "excessive rate of speed" when it struck the plaintiff; but in our opinion this is not sufficient, under the circumstances of this case, to require a submission of the question of primary negligence to the jury. The witness was some distance from the point of contact, in her kitchen, on the 16th of March, looking through a window. She has had no experience in driving an automobile, and does not state what in her opinion is an "excessive rate of speed" or "very fast." This evidence of negligence on the part of the defendant is too vague and inconclusive to be made the basis for a jury's verdict, particularly when the physical facts demonstrate that the defendant could not have been traveling at more than a very moderate rate of speed, certainly not above the lawful rate. It is also to be remembered that this accident took place between street intersections at approximately the middle of the block, at which place, under the Code, art. 56, sec. 209, automobiles are given the right of way over pedestrians. It was held by this court in *Nelson v. Seiler,* 154 Md. 63, that this statute does not prevent the use of the streets by pedestrians, and does not prohibit pedestrians from crossing the street at points other than at street intersections. It does require that between street intersections pedestrians yield the right of way to vehicles. The difference between accidents at and those between regular crossings is that in the latter the rule of ordinary care requires the motor-

ist to exercise less and the pedestrian more care to avoid injury.

The plaintiff here is a boy about thirteen years of age, familiar with the neighborhood and the streets of the city; and we think, according to his own testimony, he was guilty of contributory negligence, even assuming that there was negligence on the part of the defendant. He testified that the ball rolled to the east side of Kirk Avenue; that he proceeded to get it, and when starting, about three feet from the west curb, he looked and did not see any automobile approaching; that he went over to the east side of Kirk Avenue, picked up the ball about one foot from the east curb, did not look again, and was struck shortly before he reached the west curb on his return. While the same facts which would constitute contributory negligence on the part of an adult may not necessarily be so in respect to children of tender age, who are not expected or required to exercise a high degree of discretion and judgment, nevertheless, a normal boy of thirteen years of age must be required to exercise such precaution for his own safety as would be ordinarily attributable to one of his age; and this, we think, he failed to do upon re-crossing the street without looking at all. The fact that he looked when he started from the west side is proof that he recognized the responsibility to do so; and yet, according to his own testimony, he utterly failed to observe this precaution when he was returning. What we have said in this regard is upon the theory of the plaintiff's testimony that he was injured while returning to the west side, after having gotten the ball near the east curb. If, on the other hand, the defendant's theory of how the accident occurred is correct, there can be no doubt, upon the authority of *Havermale v. Houck, supra,* and *Sullivan v. Smith,* 123 Md. 546, that there is a failure to show any negligence on the part of the defendant, and the plaintiff cannot recover.

We have examined the exceptions to evidence, and find no reversible error, in the view we have taken of the case.

*Judgment affirmed, with costs to the appellee.*