MRS. CARRA LEE, ADMINISTRATRIX OF THE ESTATE OF HOWARD DEXTER LEE, DECEASED, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 18 March, 1953.)

**1. Appeal and Error § 39e—**

An assignment of error to the exclusion of testimony will not be sustained when appellant fails to show that the excluded testimony was competent.

**2. Evidence § 42b—**

Plaintiff offered testimony that within five to seven minutes after his intestate was killed by defendant's train, the engineer stated, after he had stopped the train, that he thought he had hit a man who was down in the track and scrambling around like he was trying to get off. *Held:* The declaration was a mere narration of past occurrences and not competent as a part of the *res gestae,* and testimony thereof was properly excluded.

**3. Railroads § 5—**

A person down on a railroad track approximately two hundred yards from the nearest crossing is a trespasser, and his negligence in placing himself in such dangerous position will bar recovery for his death unless defendant railroad company had the last clear chance to avoid the injury.

**4. Same—**

In order for a railroad company to be held liable under the doctrine of last clear chance for the fatal injury of a trespasser on its track, plaintiff must show that his intestate was killed by defendant's train, that at the time intestate was down on the track in an apparently helpless condition, that the engineer saw or by the exercise of ordinary care should have seen intestate in time to have stopped the train before striking him, and that the engineer failed to exercise such care, thereby próximately causing the death of intestate.

**5. Same—**

Evidence tending to show that the engineer of defendant's train saw intestate sitting on the track immediately the engine cleared a curve putting intestate in view, that the engineer blew his whistle and saw intestate move in an effort to get off the track, and that the engineer stopped the train as quickly as possible, *is held* insufficient to invoke the doctrine of last clear chance, and defendant railroad company's motion to nonsuit was properly allowed.

APPEAL by plaintiff from *Grady, Emergency Judge,* November Term, 1952, of JOHNSTON.

Civil action for wrongful death resulting from the alleged negligence of the defendant.

The plaintiff, the duly appointed and acting administratrix of the estate of Howard Dexter Lee, deceased, alleges in her complaint that "on or about the 7th day of December, 1948, at about 6 o'clock P.M., the plaintiff's intestate was lying in an obviously helpless condition across the outside rail of defendant's northbound track at a point north of what is known as the Rance Johnson Crossing and south of what is known as the Woodall Crossing between Benson and Four Oaks, North Carolina . . . That the defendant's said tracks were at said time and are now straight and level and unobstructed in a southerly direction for a distance of approximately three-fourths of a mile from said point . . .; that one of defendant's northbound trains, said train being operated by the defendant's servants and employees, and traveling at an excessive and unlawful rate of speed, and without sounding any warning of its approach to the said Rance Johnson Crossing, carelessly and negligently ran over and killed plaintiff's said intestate . . ."

The evidence tends to show that plaintiff's intestate was 34 years of age, and prior to his death was in good health, but that he was a drinking man, and that a jar of beer was found between the railroad tracks at the point where he was struck by the train. Counsel for appellant, in their brief, state that plaintiff's intestate was lying on the tracks of the railroad "in an apparently helpless condition while in a drunken condition."

The evidence shows that the plaintiff's intestate was struck by defendant's train at a point approximately 200 yards north of the Rance John-

son Crossing. It further shows that the engineer of the defendant's train could not have seen the plaintiff's intestate until the engine of the train rounded a curve south of this crossing. One of plaintiff's witnesses fixed the distance from this curve to the point where plaintiff's intestate was killed as approximately 700 yards, another at 565 steps which he estimated to be 565 yards. However, the plaintiff introduced another witness who testified that he measured the distance and that "it was 365 yards from the crest of the curve toward Benson and the place where Lee was killed."

Several witnesses who lived in the immediate vicinity of the Rance Johnson Crossing at the time of the accident, testified they never heard the train whistle at all; others testified they did hear it. One of the witnesses testified that he heard the train blow and remarked to his wife, "the train is blowing unusual." This witness further testified that the train slowed down and he "went out and saw it stopped completely." The lights on the train were burning. The accident occurred about 6 o'clock p.m.

Plaintiff put the defendant's engineer on the stand who testified that he was in charge of the train that killed the deceased; that it was a passenger train with twenty cars and was pulled with a Diesel; that the brakes and lights were in good condition; that he was making 70 miles per hour and was familiar with the intersection; that he knew pedestrians used the Johnson and Woodall Crossings; that at the speed he was making it would take from 500 to 1,000 feet to stop the train. Apparently this witness intended to say it would require 500 to 1,000 yards to stop the train. Later, on cross-examination, he so testified, pointing out that each car was from 70 to 80 feet long; that assuming his train was from 1,500 to 1,600 feet in length, he thought it could be stopped in that distance. He further testified that he blew for the crossing and was just finishing when he saw an object about 200 yards away, he blew the whistle and then applied the brakes; that deceased was sitting on the west rail with his feet in the side facing east. The deceased made one effort to get up before he hit him. The headlight of the train was on him; that while he was blowing the whistle the deceased raised up.

On cross-examination this witness testified: "I blew the whistle for the first crossing when I came around the curve, which was about a quarter of a mile south of it. I had completed that blow when I saw the man on the track. I began to blow again upon seeing the man and he began to move. I applied the emergency brakes and as a result thereof the train became uncoupled. The train was stopped as quickly as possible. It took from 500 to 1,000 yards to stop the train. . . . It was not possible to stop the train before hitting him."

At the close of plaintiff's evidence, defendant moved for judgment as of nonsuit. The motion was allowed and plaintiff appeals, assigning error.

*E. R. Temple, Jr., and J. R. Barefoot for plaintiff, appellant.*
*Shepard & Wood for defendant, appellee.*

DENNY, J. The appellant assigns as error the refusal of the court below to permit one of the plaintiff's witnesses to testify to the contents of a conversation the witness had with a Mr. Hill, who was on the defendant's train at the time plaintiff's intestate was killed. The witness did not identify Mr. Hill as being in any way connected with the defendant, and the record does not disclose the substance or tenor of the conversation or that it would have tended to corroborate the testimony of the witness or the testimony of other witnesses who had testified for the plaintiff. Hence, this assignment of error is overruled. *Armfield v. R. R.,* 162 N.C. 24, 77 S.E. 963; *Warren v. Susman,* 168 N.C. 457, 84 S.E. 760; *Hall v. Hall,* 179 N.C. 571, 103 S.E. 136.

Assignments of error Nos. 2, 3, 4, 5 and 6 are based upon exceptions to the action of the court in sustaining the objections of the defendant to the admission of testimony with respect to a conversation the witness had with someone he referred to as the engineer, and what he overheard between this man and some other party whom he took for granted was an employee of the defendant. The plaintiff contends the conversations took place within five to seven minutes after the deceased was killed and were admissible as part of the *res gestae.* This evidence was offered for no other purpose. An examination of this excluded testimony which was given in the absence of the jury, reveals that the man described as the engineer is purported to have said to the witness: "I think I hit a man up the road, I am not sure. . . . he was scrambling around between the T-irons like he was trying to get off . . . He was down between the T-irons." According to the witness the substance of the above statements were repeated in his presence to a "gentleman coming from the rear of the train."

We think the above statements, if made by an agent of the defendant, fall within the well defined principle of law that a mere narration of a past occurrence is only hearsay and is not admissible as against the principal or employer. *Batchelor v. R. R.,* 196 N.C. 84, 144 S.E. 542, 60 A.L.R. 1091; *Hubbard v. R. R.,* 203 N.C. 675, 166 S.E. 802; *Hester v. Motor Lines,* 219 N.C. 743, 14 S.E. 2d 794; *Coley v. Phillips,* 224 N.C. 618, 31 S.E. 2d 757.

*Stacy, C. J.,* in speaking for the Court in *Hubbard v. R. R., supra,* said: "It is the rule with us that what an agent or employee says relative to an act presently being done by him within the scope of his agency or

employment, is admissible as a part of the *res gestae,* and may be offered in evidence, either for or against the principal or employer, but what the agent or employee says afterwards, and merely narrative of a past occurrence, though his agency or employment may continue as to other matters, or generally, is only hearsay and is not competent as against the principal or employer."

The remaining assignment of error is based on an exception which challenges the correctness of the ruling of the court below on the motion for judgment as of nonsuit.

The plaintiff's intestate having entered upon the defendant's railroad track without license, invitation, or other right, occupied the status of a trespasser at the time he was killed. The accident occurred approximately 200 yards from the nearest crossing. His act in placing himself in a dangerous position on the defendant's railroad track, constituted such negligence on his part as would preclude a recovery of damages from the defendant for his death, unless the defendant had the last clear chance to avoid the injury. *Osborne v. R. R.,* 233 N.C. 215, 63 S.E. 2d 147; *Long v. R. R.,* 222 N.C. 523, 23 S.E. 2d 849; *Justice v. R. R.,* 219 N.C. 273, 13 S.E. 2d 553; *Mercer v. Powell,* 218 N.C. 642, 12 S.E. 2d 227.

In order to recover of a railroad company for the death of a trespasser on its railroad track, under the application of last clear chance or discovered peril doctrine, the personal representative of the deceased trespasser must establish by competent evidence the following: (1) That the decedent was killed by the railroad company's train; (2) that the decedent at the time he was killed was down on the track in an apparently helpless condition; (3) that the engineer saw, or by the exercise of ordinary care in keeping a proper lookout could have seen the decedent in time to have stopped the train before striking him; and (4) that the engineer failed to exercise such care, thereby proximately causing the death of the decedent. *Osborne v. R. R., supra,* and cases cited therein.

It is admitted that plaintiff's intestate was killed by the defendant's train. But it is denied that he was down on the track in an apparently helpless condition. On the contrary, the only witness who saw the decedent on the railroad track was the defendant's engineer who was plaintiff's witness. He testified the decedent was sitting on the west rail facing east. He blew the whistle and the man began to move. He applied his emergency brakes and stopped the train as quickly as possible.

The doctrine of last clear chance does not apply where a trespasser or licensee is upon a railroad track, and is apparently in possession of his normal faculties, the engineer of the train producing the injury having no knowledge or information to the contrary. In such cases the engineer is under no duty to stop his train or to slacken its speed. He has the right to assume that such person will use his faculties for his own pro-

tection and get off the track in time to avoid injury. *Mercer v. Powell, supra.*

The last clear chance does not mean the last possible chance to avoid the accident. 65 C.J.S., Negligence, section 137 (2) (e), page 744, *et seq.; Aydlett v. Keim,* 232 N.C. 367, 61 S.E. 2d 109. It means such chance or interval of time between the discovery of the peril of the injured party, or the time such peril should have been discovered in the exercise of due care, and the time of his injury as would have enabled a reasonably prudent person in like circumstances to have acted in time to have avoided the injury. *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361; *Manufacturing Co. v. R. R.,* 233 N.C. 661, 65 S.E. 2d 379; *Aydlett v. Keim, supra; Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337.

In our opinion, the evidence presented by the plaintiff in the trial below is insufficient to invoke the last clear chance or the discovered peril doctrine, and the judgment as of nonsuit entered below is

Affirmed.