Barney L. CAGLE, Appellant,

v.

**NORFOLK SOUTHERN RAILWAY CO., Appellee.**

No. 7323.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 18, 1957.

Decided March 11, 1957.

William D. Sabiston, Jr., Carthage, N. C. (John D. McConnell, Pinehurst, N. C., on brief), for appellant.

H. C. Hewson and John M. Robinson, Charlotte, N. C. (Hunter M. Jones, Charlotte, N. C., on brief), for appellee.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and WILLIAMS, District Judge.

SOBELOFF, Circuit Judge.

Without stopping, looking, or listening, the plaintiff drove his tractor over a railroad crossing in the path of an oncoming train and was seriously injured. His complaint charged the railroad company with negligence in failing to give him "notice or warning" of the train's approach, and he sought to overcome the legal effect of his contributory negligence by invoking the last clear chance doctrine. In dismissing on the pleadings, upon defendant's motion, the District Judge held this doctrine inapplicable to the present circumstances. This is an appeal from the granting of the motion to dismiss.

The pleadings consist of complaint, answer, further answer, plaintiff's reply, and several amendments thereto, and, in addition, stipulations of fact entered into at a pre-trial conference. These documents contain much repetition, but for present purposes may be briefly summarized. The collision occurred in Moore County, North Carolina, at the intersection of the defendant's track, which runs north and south, and a dirt road which meets the track at a right angle. In mid-afternoon on a May day, with the view clear for at least fifteen hundred feet to the north, from which direction the train was coming at a speed of twenty-five miles per hour, the plaintiff proceeded on his tractor westerly along the dirt road at a speed of only one mile per hour. The plaintiff was on his way to his home, which is located about two hundred feet west of the crossing.

As he moved along for at least forty feet before reaching the track and as he started across, the plaintiff was leaning forward, with his head down and below the left side of the hood. With his left hand, he was manipulating the tractor's choke, in an effort to regulate a badly functioning carburetor. At no time did he look up. If he had looked

to his right, he could have seen the train when it came within fifteen hundred feet north of the crossing. The train crew, likewise, could have seen the tractor at all times after the train got within fifteen hundred or perhaps two thousand feet of the crossing. Track and road were practically level, and it was stipulated that the plaintiff could have stopped within three feet. The train was three hours behind schedule, and the dirt road had for a long time been used by the plaintiff, his family, and others, with the knowledge and consent of the defendant.

The original complaint alleged that the train was negligently run into him without notice or warning. The defendant denied negligence on its part but asserted that if it was guilty of negligence, the plaintiff may not recover, because in driving the tractor as above shown, immediately in front of the approaching train, the plaintiff, by his own negligence, made the collision unavoidable, at least insofar as the defendant was concerned.

While admitting that he did not stop or look before attempting to cross the track, the plaintiff alleged that the collision was due to the failure of the defendant's crew to give warning of the approach of the train until it was within three or four feet of him and at a time when it was impossible for him to heed its approach and prevent the accident. The general allegation that he "failed to heed the warning of the approach of the train," the plaintiff specifically denied. He asserted that the noise of the tractor prevented his hearing the train and that he was oblivious and unaware of its approach. He then alleged that even if he was guilty of negligence, he is still entitled to recover, because the defendant saw or, by keeping a proper lookout and exercising due care, should have seen that he was not in a normal position, that his attention was diverted, and that he was unaware and oblivious of the train's approach and of his peril. The plaintiff further charged that the de-

fendant had the last clear chance to avoid injuring him and that its failure to stop and avoid the collision, or to warn him in time, was in breach of its duty to him and was the proximate cause of the collision and injuries.

The rule which denies recovery to a plaintiff who has been guilty of contributory negligence has been modified in most states by the last clear chance doctrine. This doctrine, however, has not been uniformly framed or applied, and not always the same reasons have been given as the basis for the doctrine. Various factors enter into the several definitions of the doctrine, and not the same importance is attached to each in all jurisdictions. Much of the confusion that exists in this branch of the law is due to the multiplicity of formulations of the last clear chance doctrine in terms satisfactory in the cases immediately under consideration but which are found unsatisfactory under circumstances not foreseen when the rule was declared. It is not necessary, nor would it be possible without unduly prolonging this opinion, to attempt a comprehensive discussion of the rule in all of its manifestations.

It is generally held that a plaintiff who is in a position to observe and avoid the consequences of the defendant's negligence, but fails to do so, may nevertheless recover if the defendant, knowing the plaintiff's peril and realizing, or having reason to realize, that the plaintiff cannot extricate himself from it, thereafter negligently fails to avoid the injury. It is, of course, a correct statement of the law that normally, a train crew may assume that a person on or near the track, who is in apparent possession of his faculties, will not fail to act for his own safety. However, in the case of a person who is in helpless peril, unable to save himself, even though his position was caused or contributed to by his own negligence, if his helplessness is known to the trainmen in sufficient time, the law imposes a duty on them to act to avoid injuring him.

Restatement of the Law of Torts, Sec. 479, Comment (b).

But what of the case of one who might readily get out of the way but who, because of inattention, is oblivious to his danger? In such a case, the crewmen do not violate their duty to the plaintiff unless it can fairly be said that not only seeing the plaintiff's position on or near the track, but also knowing or having reason to know that he is inattentive and not likely to act in self-protection, they fail to take reasonable measures to avoid injuring him.

The Restatement of the Law of Torts, Sec. 480, contains a comment highly pertinent here:

"However, it is not necessary that the circumstances be such as to convince the defendant that the plaintiff is inattentive and, therefore, in danger. It is enough that the circumstances are such as to indicate a reasonable chance that this is the case. Even such a chance that the plaintiff will not discover his peril is enough to require the defendant to make a reasonable effort to avoid injuring him. Therefore, if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances. If a train is at some little distance, the blowing of a whistle would ordinarily be enough, until it is apparent that the whistle is either unheard or disregarded. The situation in which the plaintiff is observed may clearly indicate that his inattention is likely to persist and that the blowing of the whistle will not be effective. If so, the engineer is not entitled to act upon the assumption that the plaintiff will awaken to his danger but

may be liable if he does not so reduce the speed of his train as to enable him to stop if necessary. Thus, if the engineer sees a vehicle with the side curtains so drawn as to obstruct the driver's view approaching on a day so windy as to make it doubtful whether the whistle will be heard, he may not be entitled to assume that the driver will discover the approach of the train and may be liable if he fails to exercise reasonable care to bring his train under the necessary control."

The theory of the plaintiff in the present case is that while he may have been negligent in keeping his head down and not looking up as he crossed the track, his unusual position on the tractor was visible to the trainmen for a sufficient length of time for them to realize that he was unconscious of his danger and to enable them to warn him by a whistle, or even if that proved ineffective, to slow down or stop the train and thereby prevent a collision.

If the case should go to trial, the defendant's employees may indeed show that they did not and could not see the plaintiff's unusual position, or seeing it, did not and could not reasonably be expected to realize (until it was too late for them to avoid striking the tractor) that the plaintiff ought not be counted upon to extricate himself from his peril. But giving full weight to the plaintiff's allegations, as we must on a motion to dismiss on the pleadings, under Federal Rules of Civil Procedure, Rule 12, 28 U.S.C.A. we turn to the legal proposition advanced by the defendant: that despite the truth of such allegations, the plaintiff cannot recover under the North Carolina law.

The defendant recognizes that one may not with impunity fail to avoid injuring a person in helpless peril "down on the track," but must exercise the last clear chance, if he has it, to avoid injury. Defendant denies, however, that in North Carolina the doctrine applies

in favor of one who is merely oblivious to his situation and would have the physical capacity to extricate himself if he were alert to the danger.

We think it clear that under the law of North Carolina, the doctrine applies as well to an oblivious plaintiff as to one who is "down on the track." If the victim is unaware of his impending peril, but the defendant is or, from the circumstances, should be, aware of plaintiff's persistent inattentiveness, the defendant, having the last clear—some North Carolina cases say the better—opportunity to avoid the accident, will be held for his failure to avail himself of it. Lassiter v. Raleigh & G. R. Co., 133 N.C. 244, 45 S.E. 570; Snipes v. Camp Mfg. Co., 152 N.C. 42, 67 S.E. 27; Norman v. Charlotte Elec. Ry. Co., 167 N.C. 533, 83 S.E. 835; Daughtry v. Cline, 224 N.C. 381, 30 S.E.2d 322, 154 A.L.R. 789.

It is suggested by defendant that in Middleton v. Norfolk & Western Railway Co., 4 Cir., 165 F.2d 907, our interpretation of the North Carolina rule is to the contrary, because there, Judge Soper, speaking for this Court, said that the last clear chance doctrine applies only in cases where the plaintiff was "down" or in "an apparently helpless condition." Defendant's suggestion overlooks the fact that the word "helpless" may encompass the predicament of one who is oblivious; for if one is unaware of his danger, the mere possession of physical capacity to avoid the exigency does not avail him. As the Supreme Court of North Carolina said in the Lassiter case, one who is ignorant of the danger awaiting him "[is] as helpless as if he had been asleep or drunk on the track." Lassiter v. Raleigh & G. R. Co., supra, 45 S.E. at page 572. Moreover, the Middleton decision falls within the line of cases holding that the engineer of the locomotive may assume, up until the last moment, that the victim will protect himself by leaving the track. Contrary to the allegations made in the pleadings in this case, such decisions indeed rest upon the ground that those plaintiffs were not helpless and were in apparent possession of their faculties. See Redmon v. Southern Ry. Co., 195 N.C. 764, 143 S.E. 829, 832; Sherlin v. Southern Ry. Co., 214 N.C. 222, 198 S.E. 640, 641; Lee v. Atlantic Coast Line R. Co., 237 N.C. 357, 75 S.E.2d 143, 147; Boone v. North Carolina R. Co., 240 N.C. 152, 81 S.E.2d 380, 384, 385. The rule announced in Middleton and in the North Carolina cases supporting it is predicated on fact situations which are negatived here.

Similarly distinguishable is Wilson v. Southern Railway Co., 223 N.C. 407, 26 S.E.2d 900, where recovery was denied on facts said by the defendant to be analogous to those before us. While it appears that at the time of his injury, Wilson was watching the plows which were stuck on the rails, it cannot be determined from the Court's opinion whether he was oblivious to his danger. The opposite conclusion is indeed compelling, inasmuch as the case was summarily dismissed on the authority of Temple v. Hawkins, 220 N.C. 26, 16 S.E.2d 400, where the decision clearly rested upon the fact that the plaintiff was not oblivious to the train's approach.

Reasoning from particular language in Aydlett v. Keim, 232 N.C. 367, 61 S.E.2d 109; Ingram v. Smoky Mountain Stages, 225 N.C. 444, 35 S.E.2d 337, and Bailey v. North Carolina R. Co., 223 N.C. 244, 25 S.E.2d 833, defendant contends that there may be no recovery in North Carolina under the doctrine of last clear chance where the victim's negligence continues until the moment of impact. If it should be shown, as it conceivably could be under the allegations, that the trainmen, having knowledge of the plaintiff's obliviousness when there was still sufficient opportunity to warn him or to stop the train, nevertheless ran him down without making an effort to avoid the accident, we would be loath to be-

lieve that North Carolina law would hold the defendant immune from liability. We do not read the North Carolina decisions as requiring such a result, even though the plaintiff has committed an act of negligence which continues to the moment of injury. As we understand the North Carolina cases, they do not condone such callous indifference to human life.

■ The language in the above cases which defendant relies upon is that there must be "an appreciable interval of time between plaintiff's negligence and his injury, during which the defendant, by the exercise of ordinary care, could, or should, have avoided the effect of plaintiff's prior negligence." We do not think that this language is susceptible to the interpretation defendant seeks to impose upon it. The cited cases, as well as others, point in the opposite direction. The common sense and true meaning of the decisions is that under the facts of the particular case, there must be a time interval between the *discovery of the plaintiff's peril,* or the time when such peril should have been discovered, and the moment of the accident, during which interval the defendant did in fact have the last clear chance to avoid the result. See Lee v. Atlantic Coast Line R. Co., supra, 75 S.E.2d at page 147. The time period begins with the discovery of the peril; the point of time when the plaintiff's negligence ceases is not controlling. The above cases on which defendant relies indicate this to be the true meaning, for in the Ingram case, it was said that "It is what defendant negligently did or failed to do after plaintiff put himself in peril that constitutes the breach of duty for which defendant is held liable." Ingram v. Smoky Mountain Stages, supra, 35 S. E.2d at page 340. And in the Aydlett case, the Court, while stating the essence of the doctrine to be that defendant have a "clear" and not merely a possible chance, said that the defendant discovered the plaintiff's peril so shortly before the accident as to afford no adequate opportunity to prevent it. Aydlett v. Keim, supra, 61 S.E.2d at page 112.. See

also Elder v. Plaza Railway, 194 N.C. 617, 140 S.E. 298, where there was too short an interval for the defendant to avert the collision.

In Norman v. Charlotte Elec. Railway Co., supra, the Supreme Court of North Carolina rejected the very argument that is advanced here, that to apply the rule of last clear chance, the plaintiff's negligence must have "ceased and culminated," observing (83 S.E. at page 840) that "The very fact that the plaintiff, in the presence of danger, continued to be negligent, and in apparent ignorance of the danger * * * but increased the duty of the defendant's motorman * * *." Whatever doubt is cast upon the Norman decision in Redmon v. Southern Railway Co., 195 N.C. 764, 143 S.E. 829, is removed by its favorable treatment in Newbern v. Leary, 215 N.C. 134, 1 S.E.2d 384, at page 389, where it was stated, that the plaintiff could rely on the doctrine of last clear chance for recovery "although his negligence may have continued until the accident."

■ Much may depend upon the character of the plaintiff's continuing negligence and its effect upon the defendant's opportunity to avoid the plaintiff's peril. It is true, of course, that in particular situations, the nature of the plaintiff's continuing contributory negligence may effectively thwart an effective opportunity to the defendant to avert the injury. Even in such cases, however, the answer lies not in the mechanical application of a rigidly worded formula, but in the simpler and more pertinent inquiry of whether the defendant was in fact afforded the last clear chance to prevent the disaster. It is possible, of course, to contend that the tractor's continuous and uninterrupted approach at the rate of only one mile per hour deceived the defendant's employees as to the plaintiff's intentions, and that when it became apparent that he would persist in his course, they no longer had an opportunity to avoid striking him. On the other hand, facts still undeveloped may enter into a judgment as to the nature of the plaintiff's continuing negli-

gence and its effect on the defendant's opportunity and duty, such as the precise point along its course where the train was when the plaintiff entered the intersection. If the peril was made manifest to the defendant's crew when the train was far enough away, it might make no difference that the plaintiff's negligence was continuing. In any event, the plaintiff's allegations do not present a case in which it can be said as a matter of law that the defendant was denied the last clear chance.

 Where physical facts are largely uncontested, but the inferences are disputed, the choice between conflicting inferences is to be made at a trial. A number of circumstances have been debated in the briefs and arguments before us, such as the fact that the train was not due at the crossing at that hour. In view of plaintiff's readily inferrible knowledge of the schedules of trains passing so close to his house, this may bear somewhat on the quality of the plaintiff's act; it may also bear on the reasonableness of the defendant's assumption of the plaintiff's awareness of his danger. In general, it is better for such controversies to be resolved after full inquiry into the facts, instead of being disposed of summarily upon the pleadings.

 The further contention is pressed upon us by the defendant that in North Carolina where a plaintiff is contributorily negligent as a matter of law (here, entering upon the track without looking or listening), the doctrine of last clear chance is inapplicable. See Sherlin v. Southern Railway Co., supra. While superficially the cases seem to support the defendant, closer analysis reveals the error of its interpretation of the rule. It is declared in most of the cases that the doctrine of last clear chance "does not apply when the contributory negli-

gence of the party injured or complaining, as a matter of law, *bars recovery."* (Italics ours.) Rimmer v. Southern Railway Co., 208 N.C. 198, 179 S.E. 753. See also Redmon v. Southern Railway Co., supra, 143 S.E. at page 832. We think that the intended meaning is that where the plaintiff's contributory negligence is the proximate and efficient cause of the accident, the defendant cannot in fairness be said to have the last clear chance; for indeed the rule is merely that the doctrine is inapplicable *where contributory negligence bars recovery.* Many cases are cited in Redmon as authority for the proposition. Inasmuch as those cases involved contributory negligence as the proximate cause,[1] our interpretation is clearly established. There can be no other explanation in the light of cases where the rule was stated and the Supreme Court of North Carolina yet inquired into the evidence of last clear chance. See Davis v. Piedmont & N. Ry. Co., 187 N.C. 147, 120 S.E. 827; Sherlin v. Southern Ry., supra; Dowdy v. Southern Ry. Co., 237 N.C. 519, 75 S.E. 2d 639. The debated phrase merely expresses the general understanding of the rule that contributory negligence as a matter of law will bar recovery unless the defendant had the last clear chance. Lee v. Atlantic Coast Line R. Co., supra, 75 S.E.2d at page 146.

We do not agree that the pleadings fail to disclose a cause of action. If the plaintiff were to prove upon trial the essential facts alleged in his pleadings and to convince the trier of the facts that he was oblivious to his danger, but that the trainmen were or, from the circumstances, should have been aware of his obliviousness and that, having a sufficient opportunity to avert the collision, they failed to do so, he would be entitled to recover. Accordingly, the judgment is reversed and the case remanded for trial.

Reversed and remanded.

1. Cooper v. North Carolina R. Co., 140 N.C. 209, 52 S.E. 932, 3 L.R.A.,N.S., 391; Mitchell v. Seaboard Air Line Ry. Co., 153 N.C. 116, 68 S.E. 1059; Coleman v. Atlantic Coast Line R. Co., 153 N.C. 322, 69 S.E. 251; Davidson v. Seaboard Air Line R. Co., 171 N.C. 634, 88 S.E. 759; Holton v. Kinston-Carolina R. Co., 188 N.C. 277, 124 S.E. 307.