George C. MUMFORD, Jr., Administrator of the Estate of Richard Alan Mumford State of Maryland for the use of George C. Mumford, Jr., father of the intestate, Richard Alan Mumford,

v.

UNITED STATES of America.

Civ. No. 8515.

United States District Court
D. Maryland.

April 1, 1957.

Daniel L. O'Connor and Woodrow A. Shriver, Washington, D. C., for plaintiffs.

Leon H. A. Pierson, U. S. Atty., and J. Jefferson Miller, II, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., presents the usual issues of negligence, contributory negligence and last clear chance, in the case of an 8 year old boy who rode his bicycle across a suburban street, in the middle of the block, in the path of an approaching mail truck.

The accident occurred about 3:00 P.M. on June 17, 1955, on 25th Avenue, in District Heights, Prince George's County, Maryland. That street runs north and south; its macadam pavement measures 36 feet from curb to curb, flanked on each side by a 6 foot grass plot, a 5 foot sidewalk, and 26 feet of lawn leading to a housing development. At a distance of 102 feet, 6 inches south of Iverson Street, each side of 25th Avenue is intersected by an 18 foot private alley or driveway, leading to a parking area in the rear of the houses. The grade of the driveway to the east is 4½ percent up from the street. Many children live in the neighborhood.

Paul B. Rogers, a mounted postal carrier, was driving a 1952 Dodge one-ton truck; its brakes and tires were adequate, and the brakes were in good working order. After delivering a parcel post package north of Iverson Street, Rogers proceeded south on 25th Avenue, stopped before crossing Iverson Street, which is a divided highway, and continued south on 25th Avenue intending to turn off after a few blocks to make another delivery. The street was clear and Rogers was driving between 20 and 25 m.p.h. When he was about 40 feet north of the driveway, he saw a boy on a bicycle entering 25th Avenue from the east driveway. The boy was going fast, and Rogers did not see him look toward the truck. There were no eye witnesses to the accident except Rogers and he did not notice the boy until the bicycle was entering the street; it is, therefore, impossible to tell whether the boy had been riding down the driveway from the parking lot or had been riding along the sidewalk and decided to cross the street at that point. Rogers applied his brakes promptly and brought the truck to a stop before the front had gone much past the center of the driveway. When it came to a stop, the front of the truck was 7 feet from the west curb, the rear 8 feet. The boy on the bicycle had continued to cross the street in front of the truck, and the rear of the bicycle was struck by the right front bumper. There was little damage to the bicycle except a slight dent on the rear fender, but the boy was thrown off and struck his head on the curb, receiving injuries from which he died 4 hours later, without regaining consciousness.

There was no evidence that the bicycle was pushed or dragged, and I find that the truck did not proceed more than 2 feet after the impact. There were skid marks running back 34 feet from the rear wheels of the truck. At a speed of 25 m.p.h., it requires 43 feet of braking distance to bring a vehicle with proper brakes and tires to a stop.[1] The skid marks, therefore, confirm the driver's testimony that the truck was going less than 25 m.p.h. These facts, testified to by the police officer, are the principal bases for my findings with respect to speed and distance.

The boy, Richard Alan Mumford, was 8½ years old, had just completed the third grade, was a member of the "Safe-

---

[1]. The 43 ft. of braking distance is in addition to the time required to apply the brakes, usually called reaction time, which averages ½ sec., during which a vehicle would travel 18 ft. at 25 m. p. h. At that speed the stopping distance would be 61 ft. Since I find the speed in this case to have been less than 25 m. p. h., and the driver to have average reactions, the total stopping distance would be about 50 ft.

ty Carefuleers" at school, and was familiar with safety rules. Although he did not own a bicycle, he had been riding for two years. On the day of the accident, he had borrowed a friend's bicycle.

The boy's father is employed as an illustrator for the F.B.I.; the boy was talented, and might well have joined that or some other organization in a similar capacity upon graduation from high school; he would probably have earned about $3,000 a year from age 17½ to 21, a total of $10,500. The cost of maintenance from age 8½ to 21, at $500 a year, would be $6,250. The difference, $4,250, adjusted for discounts, to $4,000, I find to be the pecuniary loss to the parents. This is the only loss recoverable under the Maryland law, and must be limited to the minority of the child, State, for Use of Coughlan v. Baltimore & O. R. Co., 24 Md. 84; State, for Use of Strepay v. Cohen, 166 Md. 682, 172 A. 274, 94 A.L.R. 427; Employers' Liability Assurance Corp. v. Baltimore & O. R. Co., 173 Md. 238, 195 A. 541; State, for Use of Parr v. Board of County Com'rs, 207 Md. 91, 113 A.2d 397, despite a possible inference to the contrary from an isolated statement in Snyder v. United States, D.C.D.Md., 118 F.Supp. 585, 593, modified United States v. Guyer, 4 Cir., 218 F.2d 266, reversed 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796. I cannot accept the testimony that the boy's services in "cleaning up" around the house had a net pecuniary value to the parents of 75¢ to $1 a day. A normal boy is likely to create more disorder than he ever cleans up. In the administrator's case, the funeral expenses exceeded $500, the statutory limit of recovery, Maryland Code, Art. 93, Sec. 5; the medical expenses totaled $193.25. There was no conscious pain and suffering.

Plaintiffs charge Rogers with negligence in that he did not see the boy sooner and did not sound his horn after he saw the boy entering the street. It is true, of course, that a driver must use reasonable care to observe conditions along the side of a highway, although his primary attention should be directed to the road in front. If in fact the boy started to ride down the driveway from the parking lot, the driver could have seen him as soon as he came out from behind the house, some 37 feet from the curb, provided his attention had been directed to that point at that time; but the driver would have had the right to assume that the boy would turn to the right or to the left on the sidewalk or in the empty street and would not ride straight across in front of the truck. Belle Isle Cab Co. v. Pruitt, 187 Md. 174, 49 A.2d 537; R. & L. Transfer Co. v. State, 160 Md. 222, 153 A. 87. If the boy was riding on the sidewalk, the driver had even less reason to expect the boy to turn into the street and to ride entirely across it without looking. The driver was proceeding at a moderate speed and had his truck under control. It was not his duty to sound his horn every time he saw a boy on a bicycle; but it was his duty to sound his horn or to take other appropriate measures to avoid an accident as soon as he saw, or should have seen, that the boy was entering the street without looking at the truck. When he saw the boy at the curb, the driver "slammed on" his brakes and brought the truck to a stop as promptly as it was possible to do so. It is debatable whether he should have sounded his horn instead of devoting all his efforts to stopping the truck, and whether he could have sounded his horn without delaying or reducing the effect of his efforts to stop. He succeeded in limiting the impact to a minimum; it was an evil chance that caused the boy to fall in such a way that he was seriously injured. Of course, the accident was the proximate cause of the injury, but the effectiveness of the driver's action in bringing the truck to a stop must be considered in determining whether or not the driver was negligent in directing all his efforts to stopping, rather than signaling. I find as a fact that he was not negligent. This finding, of course, requires a judgment for the defendant; but since other questions were argued in the briefs, it seems desirable to discuss them briefly.

The usual rules of the road apply to persons riding bicycles. Maryland Code, 1951 Ed., Art. 66½, Secs. 150, 199, 208. An 8 year old child is not held to the same measure of care required of an adult, but he is held to the same measure of care which children of the same age and intelligence ordinarily exercise under similar circumstances. Slaysman v. Gerst, 159 Md. 292, 301, 150 A. 728; Zulver v. Roberts, 162 Md. 636, 641, 161 A. 9; Henkelmann v. Metropolitan Life Ins. Co., 180 Md. 591, 597, 26 A.2d 418. After three years in school with safety training, an 8 year old child should know that it is careless to ride a bicycle across a street in the middle of the block without looking for traffic, or, having looked, to try to race across in front of an approaching truck. The deceased must have done one or the other. In either event he was negligent, as a matter of fact. We are not concerned in this case with a motion for a directed verdict, as a matter of law.

The Court of Appeals of Maryland has seldom applied the "last clear chance" doctrine in automobile cases, but has usually held that the opportunity the plaintiff had to extricate himself from the peril made it a case of concurrent negligence. The Maryland Court has repeatedly held that a favored driver has the right to assume that an unfavored driver will stop before entering the intersection and will yield the right of way, up to the very moment of impact. Fowler v. De Fontes, 211 Md. 568, 128 A.2d 395; Belle Isle Cab Co. v. Pruitt, 187 Md. 174, 49 A.2d 537; and the many earlier cases cited in those opinions. The fact that the person in peril is a child does not alter the legal obligation of a driver under the last clear chance doctrine. "His opportunity to act is no greater, nor his duty stricter, because the person in peril happens to be a child." Rather v. City and County of San Francisco, 81 Cal.App.2d 625, 184 P.2d 727, 731.

A driver cannot expect as much of an 8 year old as of an adult; but as Judge Bond said in a case involving a younger child, "whether the action should be considered negligence in so small a child, or not, if it could be found that she was not in control of her safety, because of youth or bewilderment, and found that the driver should have seen, in time to stop, that she was not so in control, then causal negligence on a last clear chance afforded the driver might be found. The question would be one of sufficiency of evidence of time to stop." Stafford v. Zake, 179 Md. 460, 463, 464, 20 A.2d 144, 145. In Cagle v. Norfolk Southern Railway Co., 242 F.2d 405, the Fourth Circuit dealt with the case of a man who might readily have kept out of the way but who, because of inattention, was oblivious to his danger. The Court said: "In such a case, the crewmen do not violate their duty to the plaintiff unless it can fairly be said that not only seeing the plaintiff's position on or near the track, but also knowing or having reason to know that he is inattentive and not likely to act in self-protection, they fail to take reasonable measures to avoid injuring him." 242 F.2d at page 408. See also Domeski v. Atlantic Refining Co., 202 Md. 562, 563, 568, 97 A.2d 313; 2 Restatement, Torts, sec. 480.

The driver in the instant case met both those tests. I find as a fact that there was no "time to stop" after the driver saw or should have seen that the boy "was not in control of (his) safety". Even if the driver knew or had reason to know that the boy was "inattentive and not likely to act in self-protection", the driver did not "fail to take reasonable measures to avoid injuring him". The driver applied his brakes promptly and reduced the impact to a minimum. Sounding his horn would have done no good if the boy had seen the truck and was trying to get across the intervening space first. Even if the boy had not seen the truck, sounding the horn might have confused him; it was not negligent for the driver to devote all his energies to stopping the truck.

Judgment for the defendant.